*In re* MKK

Docket No. 292065. Submitted December 2, 2009, at Lansing. Decided December 22, 2009, at 9:15 a.m.

Nicholas V. Mattson brought an action in the Washtenaw Circuit Court, Family Division, seeking entry of an order of filiation declaring him the father of MKK, a minor born out of wedlock to Casey Jo Keilman. Jennifer L. and Matthew R. Linden, the child's maternal aunt and uncle, then filed a petition seeking to adopt the child. Accompanying the adoption petition was Keilman's petition for a hearing to identify the father and determine or terminate his parental rights pursuant to MCL 710.36(1). The trial court in the paternity action, Darlene A. O'Brien, J., denied Keilman's motion to stay the paternity action and ordered DNA testing to determine paternity. Mattson filed a motion to stay the adoption proceedings. Following a hearing during which the results of DNA testing indicating a 99.99 percent probability that Mattson is the father were presented, the trial court in the adoption case, Donald E. Shelton, J., denied the motion to stay the adoption case. Following an August 6, 2008, hearing, Judge Shelton entered an order finding that Mattson was the child's putative father, concluding that Mattson had not provided substantial support or established a custodial relationship to the extent that the provisions of MCL 710.39(2) applied, and stated that the case would proceed to a best interests hearing pursuant to MCL 710.39(1). Judge Shelton also stated that the paternity action was stayed pending conclusion of the adoption proceedings. The paternity case was then reassigned to Judge Shelton. Mattson moved to consolidate the cases, and Judge Shelton denied the motion. Following a best interests hearing, Judge Shelton, in a March 18, 2009, opinion and order, concluded that it was not in the child's best interests to grant custody to Mattson, but did not terminate Mattson's parental rights. Judge Shelton also determined that placement with the Lindens was not in the child's best interests and denied the adoption petition. Mattson then brought a motion to disqualify Judge Shelton, which the judge and the chief judge of the circuit court denied. The Lindens appealed and Mattson cross-appealed.

The Court of Appeals *held*:

1. Although proceedings under the Adoption Code, MCL 710.21 *et seq.*, should, in general, take precedence over proceedings under the Paternity Act, MCL 722.711 *et seq.*, adoption proceedings may be stayed upon a showing of good cause, as determined by the trial court on a case-by-case basis. Here, there was good cause to stay the adoption proceedings in favor of the paternity action. Judge Shelton erred by denying Mattson's motion to stay and by proceeding with the best interests hearings under MCL 710.39 without first determining the issue of paternity. The court's August 6, 2008, and March 18, 2009, orders must be vacated and the case must be remanded to allow the paternity case to proceed.

2. The timing of a paternity action is only one factor to be considered in determining whether there is good cause under MCL 710.25(2) to stay adoption proceedings. Because the general presumption followed by courts of this state is that the best interests of a child are served by awarding custody to the natural parent or parents, giving a paternity action priority over an adoption proceeding does not necessarily conflict with protecting the best interests of the child.

3. Mattson failed to establish any grounds for the disqualification of Judge Shelton. Judge Shelton's basis for proceeding with the case and applying the standards for terminating a putative father's rights was reasonable. In and of itself, the judge's actions were not reflective of a high probability of bias to the extent that due process principles required disqualification. The motion for disqualification was properly denied.

August 6, 2008, and March 18, 2009, orders vacated and case remanded to allow paternity action to proceed.

1. ADOPTION — PATERNITY ACTIONS — PRECEDENCE OF ADOPTION ACTIONS.

Proceedings under the Adoption Code generally take precedence over proceedings under the Paternity Act, but adoption proceedings may be stayed upon a showing of good cause, as determined by the trial court on a case-by-case basis (MCL 710.21 *et seq.*, 722.711 *et seq.*).

2. JUDGES — DISQUALIFICATION OF JUDGES.

A motion to disqualify a trial court judge must be filed within 14 days after the moving party discovers the ground for disqualification; untimeliness is a factor in deciding whether the motion should be granted (MCR 2.003[D][1]).

*Williams, Williams, Rattner & Plunkett, P.C.* (by *John F. Mills*), for Matthew R. and Jennifer L. Linden.

*Steven P. Tramontin* for Nicholas V. Mattson.

*Herbert A. Brail* for Casey Jo Keilman.

Before: BECKERING, P.J., and CAVANAGH and M. J. KELLY, JJ.

PER CURIAM. This case involves the interplay of the Adoption Code, MCL 710.21 *et seq.*, and the Paternity Act, MCL 722.711 *et seq.* Respondent, the minor child's putative father, filed a separate paternity action,[1] seeking entry of an order of filiation. This adoption case commenced when petitioners, the minor child's maternal aunt and uncle, filed a petition to adopt the child. The trial court denied respondent's motion to stay the adoption proceedings in an August 6, 2008, order. The court then stayed the paternity action pending the conclusion of the adoption proceedings. Petitioners appeal as of right the trial court's March 18, 2009, order denying their adoption petition. Respondent cross-appeals, challenging the trial court's: September 2, 2008, order holding that he failed to provide substantial and regular support under MCL 710.39(2); failure to decide his September 10, 2008, motion to dismiss; October 14, 2008, order denying his motion to amend the home study; March 18, 2009, order denying him custody of the child; and May 6, 2009, order denying his motion to disqualify the trial court judge. We vacate the trial court's August 6, 2008, and March 18, 2009, orders and remand for further proceedings.

I. FACTS AND PROCEDURAL HISTORY

On December 19, 2007, appellee Casey Jo Keilman informed respondent that she was pregnant with the

---

[1] Washtenaw Circuit Court Docket No. 08-000889-DP.

child and intended to give the child up for adoption. Respondent objected to the planned adoption and on February 7, 2008, filed a notice of intent to claim paternity. On the day the child was born, March 22, 2008, Keilman signed the necessary paperwork to place him up for adoption, naming petitioners as the intended adoptive parents and immediate custodians. Immediately upon discharge from the hospital, the child was placed with petitioners.

Respondent filed his paternity action on April 16, 2008. That case was initially assigned to Judge Darlene A. O'Brien. On May 7, 2008, petitioners filed their petition to adopt the child. The adoption case was assigned to Judge Donald E. Shelton. Accompanying the adoption petition was Keilman's petition for a hearing to identify the father and determine or terminate his parental rights pursuant to MCL 710.36(1).[2]

---

[2] MCL 710.36(1) states:

> If a child is claimed to be born out of wedlock and the mother executes or proposes to execute a release or consent relinquishing her rights to the child . . . , and the release or consent of the natural father cannot be obtained, the judge shall hold a hearing as soon as practical to determine whether the child was born out of wedlock, to determine the identity of the father, and to determine or terminate the rights of the father as provided in [section 39] of this chapter.

MCL 710.39 states, in part:

> (1) If the putative father does not come within the provisions of subsection (2), and if the putative father appears at the hearing and requests custody of the child, the court shall inquire into his fitness and his ability to properly care for the child and shall determine whether the best interests of the child will be served by granting custody to him. If the court finds that it would not be in the best interests of the child to grant custody to the putative father, the court shall terminate his rights to the child.

> (2) If the putative father has established a custodial relationship with the child or has provided substantial and regular support or care in accordance with the putative father's ability to provide

In a June 17, 2008, order, Judge O'Brien denied Keilman's motion to stay the paternity action and ordered DNA testing to determine paternity. On July 25, 2008, respondent filed a motion to stay the adoption proceedings pending the outcome of his paternity action. He argued that the paternity action should be decided first because its outcome would render this adoption case moot. Petitioners opposed the motion, arguing that the Paternity Act did not prevent respondent's rights as a putative father from being determined and terminated under the Adoption Code, under which the rights of the adoptee are paramount. Keilman concurred and also asserted that respondent only filed the paternity action in an attempt to thwart her adoption plan.

At the July 30, 2008, hearing on respondent's motion to stay, the results of the DNA testing were presented. The testing revealed a 99.99 percent probability that respondent was the child's biological father. Respondent argued that he was probably only one hearing away from being declared the child's legal father and the Adoption Code should not supersede his effort to do so under the Paternity Act. Petitioners and Keilman responded that the results of the DNA testing were irrelevant to the adoption proceedings and those proceedings had priority over respondent's paternity case pursuant to MCL 710.21a, which lists the general purposes of the Adoption Code, and MCL 710.25.[3] Judge Shelton denied respondent's motion, stating that he did

such support or care for the mother during pregnancy or for either mother or child after the child's birth during the 90 days before notice of the hearing was served upon him, the rights of the putative father shall not be terminated except by proceedings in accordance with section 51(6) of this chapter or section 2 of chapter XIIA.

[3] MCL 710.25 states:

not "believe that these actions are necessarily in conflict. I don't think one can delay the other." He then bifurcated the adoption proceedings.

On August 6, 2008, Judge Shelton conducted a hearing, at which the parties presented evidence regarding respondent's efforts to provide support and care during Keilman's pregnancy and the 90-day period before notice of the hearing was mailed to him. It was undisputed that respondent was the child's father and he and Keilman were never married. Keilman did not place respondent's name on the birth certificate, told the hospital staff not to release any information regarding her admission to give birth because she did not want respondent present, which he was not, and declined to sign an affidavit of parentage. Keilman testified that she did not talk to respondent between the time she informed him of the pregnancy and the hearing date. She acknowledged, however, that she met him at a park-n-ride lot in April 2008, but that he did not request to see the child. She showed him a photograph. Respondent testified that he asked Keilman by email who her doctor was, wanted to be present for the birth, and telephoned two hospitals in an attempt to find Keilman. He also wanted to be named on the birth certificate and was willing to sign an affidavit of parentage. Respondent testified that he repeatedly asked to see the child since his birth, but Keilman always replied that the child had already been given up for adoption. Beginning in January 2008, respondent attended parenting classes and worked with a social services employee to prepare

(1) All proceedings under this chapter shall be considered to have the highest priority and shall be advanced on the court docket so as to provide for their earliest practicable disposition.

(2) An adjournment or continuance of a proceeding under this chapter shall not be granted without a showing of good cause.

himself for becoming a parent. Respondent testified that he sent money to Keilman on three occasions in February 2008 by certified mail. He also offered to help Keilman with her medical bills in one of the certified letters. After the letters were returned to him, he did not send any more letters. Keilman testified that she did not receive any certified mail at her home and was unaware that respondent had tried to send money in February 2008. She did not recall respondent's asking about her doctor or medical bills. In the month preceding the hearing, respondent sent money for the child to petitioners' counsel on four occasions. Respondent also opened a bank account for the child.

Judge Shelton found that respondent was the child's putative father as established by the DNA testing. He stated that whether respondent provided substantial and regular support during the 90-day period before notice of the hearing was served was irrelevant in this case; rather, the real question was whether Keilman impeded respondent's efforts to provide support during her pregnancy. Judge Shelton found Keilman's testimony credible and stated:

> I will say, frankly, this case seems to have been engineered during this period of time which is disturbing to me but to the extent that the engineering involves sending certified mail with—and then claiming that the impeding was that a person did not go and get the certified mail, I do not find that that is impeding as provided by—by the case law.

Accordingly, Judge Shelton concluded that respondent did not fall under MCL 710.39(2) and, therefore, that the case would proceed to a best interests hearing pursuant to MCL 710.39(1). The judge then stated: "The paternity action is stayed pending conclusion of these proceedings." At the time of this ruling, the paternity case was still assigned to Judge O'Brien.

On August 26, 2008, respondent's paternity case was reassigned to Judge Shelton. Three days later, respondent filed a motion to consolidate the paternity and adoption cases. Respondent argued that pursuant to MCL 722.717(1)(b), an order of filiation was required to be entered because he had acknowledged paternity before the court. He further argued that the cases should be consolidated so that the trial court could address the paternity issue first, because if respondent was the legal father, his rights could only be terminated pursuant to MCL 712A.19b, not MCL 710.39. At a September 3, 2008, hearing, petitioners argued that respondent's motion to consolidate was moot because both cases had been assigned to Judge Shelton. Respondent argued that all that remained was for the trial court to recognize him as the legal father and that procedural and substantive due process required that the paternity action be decided first. Judge Shelton stated that respondent had raised interesting constitutional issues, but the law was clear that he should not rule on such issues unless required to do so. The judge granted petitioners' motion to exclude testimony pertaining to constitutional issues and denied respondent's motion to consolidate. Judge Shelton reasoned that if he found in respondent's favor under MCL 710.39(1), it would not be necessary to reach the constitutional issues. If he found that adoption was in the child's best interests, he would then entertain further briefing of the constitutional issues.

Judge Shelton conducted a four-day best interests hearing beginning on September 4, 2008. In a March 18, 2009, opinion and order, the judge made several findings of fact and then addressed the best interests factors set forth in MCL 710.22(g), acknowledging that the parties agreed that factors (*viii*) through (*x*) did not apply. He found the evidence sufficient to support an adverse

finding regarding respondent for all factors except factor (*v*), for which the evidence was equivocal, and factor (*vii*), for which the evidence was not sufficient to support an adverse finding. Accordingly, Judge Shelton concluded that it was not in the child's best interests to grant custody to respondent. The judge did not, however, terminate respondent's parental rights.

Judge Shelton also concluded that placement with petitioners was not in the child's best interests and denied the adoption petition, stating:

> It is highly likely that the child will learn the identity of his biological mother and father, and of this litigation, and that will have an adverse effect on the child growing up. The mother will certainly be around in [the child's] life in a way that would be very confusing. In the small community where they all live, the father will likely also be around and his presence will add more confusion to [the child]. That scenario would not be in the child's best interest. . . . [A]n adoption plan with her [the mother's] aunt and uncle in the same community creates significant problems given the facts and circumstances of this case.

Thereafter, petitioners and Keilman moved for rehearing. At an April 8, 2009, hearing, Judge Shelton denied the motions and ordered the parties to submit, pursuant to MCL 710.62, their proposed plans for the disposition of the child, including custody, parenting time, and child support. The judge memorialized his holding in an April 22, 2009, order. On April 23, 2009, respondent filed a motion under MCR 2.003(B)(1) (now [C][1][a]) to disqualify Judge Shelton, arguing that the judge was biased against him and had denied him due process. On May 6, 2009, Judge Shelton heard the motion and stated that he had no bias. He denied the motion as untimely and without merit. Thereafter, the matter was referred to the chief judge of the circuit court, who found, pursuant to MCR 2.003(C)(1) (now

[D][1]), that respondent should have filed his motion, at the latest, within 14 days after Judge Shelton's March 18, 2009, opinion and order denying respondent custody of the child. The chief judge further found that there was no evidence of bias, prejudice, or deep-seated favoritism or antagonism.

Petitioners now appeal as of right. Respondent cross-appeals.[4]

## II. INTERPLAY OF THE ADOPTION CODE AND PATERNITY ACT

Respondent argues that he was denied both procedural and substantive due process by Judge Shelton's application of the Adoption Code and decision to stay his paternity action until completion of the adoption proceedings. Although respondent frames this as a constitutional issue, it is primarily an issue of statutory construction. We must determine whether the Adoption Code or the Paternity Act takes precedence when contemporaneous actions have been filed under each. Although proceedings under the Adoption Code should, in general, take precedence over proceedings under the Paternity Act, adoption proceedings may be stayed upon a showing of good cause, as determined by the trial court on a case-by-case basis. In this case, there was good cause to stay the adoption proceedings in

---

[4] On December 1, 2009, after the parties filed their claims of appeal and appellate briefs, Judge Shelton entered an order pertaining to both this case and respondent's related paternity action, awarding sole physical and legal custody of the child to Keilman, ordering respondent to pay monthly child support, and awarding respondent parenting time of two hours every other week to be supervised by petitioners. Respondent's counsel informed this Court of the order in a letter dated the same day and the parties addressed the order at oral arguments. We must, however, decline to address the parties' arguments regarding the order, because they are not properly before this Court. An appeal of right can only be taken after an order is entered, not before. MCR 7.204(A)(1)(a).

favor of respondent's paternity action. Judge Shelton erred by denying respondent's motion to stay and proceeding with the § 39 hearings. Therefore, the judge's August 6, 2008, and March 18, 2009, orders must be vacated.

### A. STANDARD OF REVIEW AND RULES OF STATUTORY CONSTRUCTION

We review constitutional issues and questions of statutory construction de novo. *Dep't of Transportation v Tomkins*, 481 Mich 184, 190; 749 NW2d 716 (2008). "Statutory language should be construed reasonably, keeping in mind the purpose of the act." *Twentieth Century Fox Home Entertainment, Inc v Dep't of Treasury*, 270 Mich App 539, 544; 716 NW2d 598 (2006) (quotation marks and citation omitted). The purpose of judicial statutory construction is to ascertain and give effect to the intent of the Legislature. *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999). In determining the Legislature's intent, we must first look to the language of the statute itself. *Id*. Moreover, when considering the correct interpretation, the statute must be read as a whole. *Id.* at 237. A statute must be read in conjunction with other relevant statutes to ensure that the legislative intent is correctly ascertained. *Walters v Leech*, 279 Mich App 707, 709-710; 761 NW2d 143 (2008). The statute must be interpreted in a manner that ensures that it works in harmony with the entire statutory scheme. *Id.* at 710; see also *Wayne Co v Auditor General*, 250 Mich 227, 233; 229 NW 911 (1930). The Legislature is presumed to be familiar with the rules of statutory construction and, when promulgating new laws, to be aware of the consequences of its use or omission of statutory language, *In re Complaint of Pelland Against Ameritech Michigan*, 254 Mich App 675, 687; 658 NW2d 849 (2003); *Lumley v Univ of*

*Michigan Bd of Regents*, 215 Mich App 125, 129-130;
544 NW2d 692 (1996), and to have considered the effect
of new laws on all existing laws, *Great Wolf Lodge of
Traverse City, LLC v Pub Service Comm*, 285 Mich App
26, 42; 775 NW2d 597 (2009).

### B. THE PATERNITY ACT

There are several ways to establish paternity. When a
child is born out of wedlock, one way is to seek a judicial
determination of paternity under the Paternity Act.
*Aichele v Hodge*, 259 Mich App 146, 154-155; 673 NW2d
452 (2003). The Paternity Act " 'was created as a
procedural vehicle for determining the paternity of
children "born out of wedlock," and enforcing the
resulting support obligation.' " *Sinicropi v Mazurek*,
273 Mich App 149, 163; 729 NW2d 256 (2006), quoting
*Syrkowski v Appleyard*, 420 Mich 367, 375; 362 NW2d
211 (1985); see also MCL 722.712. Once a paternity
action has been filed, the parties are required to submit
to blood or tissue typing determinations, which may
include DNA identification profiling, during the pretrial
stage. MCL 722.716(1). If the testing shows that there
is a 99 percent or higher probability of paternity,
paternity is presumed. MCL 722.716(5). Paternity is
established once an order of filiation is entered. MCL
722.717(1) states:

> The court shall enter an order of filiation declaring
> paternity and providing for the support of the child under
> 1 or more of the following circumstances:
>
> (a) The finding of the court or the verdict determines
> that the man is the father.
>
> (b) The defendant acknowledges paternity either orally
> to the court or by filing with the court a written acknowl-
> edgement of paternity.

(c) The defendant is served with summons and a default judgment is entered against him or her.

Once a man perfects his legal paternity, he is considered a "parent," with all the attendant rights and responsibilities, and termination of his parental rights can generally only be accomplished in cases of neglect or abuse under MCL 712A.19b. See *In re LE*, 278 Mich App 1, 19, 22; 747 NW2d 883 (2008).

### C. THE ADOPTION CODE

Adoption is strictly statutory. The Adoption Code was designed for the following general purposes:

(a) To provide that each adoptee in this state who needs adoption services receives those services.

(b) To provide procedures and services that will safeguard and promote the best interests of each adoptee in need of adoption and that will protect the rights of all parties concerned. If conflicts arise between the rights of the adoptee and the rights of another, the rights of the adoptee shall be paramount.

(c) To provide prompt legal proceedings to assure that the adoptee is free for adoptive placement at the earliest possible time.

(d) To achieve permanency and stability for adoptees as quickly as possible.

(e) To support the permanency of a finalized adoption by allowing all interested parties to participate in proceedings regarding the adoptee. [MCL 710.21a.]

The Adoption Code provides provisions to accomplish these goals. As indicated, MCL 710.25 states:

(1) All proceedings under this chapter shall be considered to have the highest priority and shall be advanced on the court docket so as to provide for their earliest practicable disposition.

(2) An adjournment or continuance of a proceeding under this chapter shall not be granted without a showing of good cause.

Unless there is parental consent to the adoption, an adoption petition must be accompanied by, among other things, proof of release of parental rights or an order terminating parental rights over the child. MCL 710.26(1)(a). If the child is claimed to be born out of wedlock and the mother executes or proposes to execute a consent or release relinquishing her rights or joins in a petition for adoption by her husband, and the consent or release of the natural father cannot be obtained, the trial court must hold a hearing to determine whether the child was born out of wedlock, determine the identity of the father, and determine or terminate the father's rights. MCL 710.36.

If the father is putative, the court must determine his rights pursuant to MCL 710.39. The two-tiered standard set forth in § 39 for terminating the parental rights of a putative father is based on principles set forth in multiple United States Supreme Court cases.[5]

---

[5] These cases are set forth in *In re BKD*, 246 Mich App 212, 221-222; 631 NW2d 353 (2001), in which this Court stated:

The United States Supreme Court has held that the father of an illegitimate child, who has taken steps to establish a custodial or supportive relationship with the child has a constitutionally protected interest in continuing that relationship. *Caban v Mohammed*, 441 US 380; 99 S Ct 1760; 60 L Ed 2d 297 (1979); *Stanley v Illinois*, 405 US 645; 92 S Ct 1208; 31 L Ed 2d 551 (1972). Accordingly, the Due Process and Equal Protection Clauses bar the state from terminating the parental rights of the father of an illegitimate child without the same showing of unfitness that would be necessary to terminate the rights of a mother or a married father. *Caban*, *supra* at 392-394; *Stanley*, *supra* at 658. However, where the father of an illegitimate child has not taken steps to establish a custodial or supportive relationship, the state may constitutionally terminate his parental rights through procedures and standards that are less stringent than those required to terminate the parental rights of a mother or a married father. *Lehr*

See *In re BKD*, 246 Mich App 212, 222; 631 NW2d 353 (2001), citing *In re Barlow*, 404 Mich 216, 229 n 8; 273 NW2d 35 (1978). As explained in *In re BKD*, 246 Mich App at 222, "[s]ubsection 39(1) determines the rights of putative fathers who have failed to establish a custodial or supportive relationship according to a less rigorous best interests standard." If a putative father has failed to establish such a relationship, but appears at the hearing and requests custody of the child, the trial court "shall inquire into his fitness and his ability to properly care for the child and shall determine whether the best interests of the child will be served by granting custody to him. If the court finds that it would not be in the best interests of the child to grant custody to the putative father, the court shall terminate his rights to the child." MCL 710.39(1). Conversely, "subsection 39(2) determines the rights of putative fathers who have established a relationship according to the more rigorous standard applied to mothers and married fathers." *In re BKD*, 246 Mich App at 222. If a putative father has established a custodial or supportive relationship, his parental rights can only be terminated pursuant to § 51(6) of the Adoption Code, MCL 710.51(6), which pertains to stepparent adoptions, or pursuant to child protective proceedings, MCL 712A.1 *et seq.* MCL 710.39(2).

### D. ANALYSIS

Respondent argues that he was denied due process by Judge Shelton's application of the Adoption Code and decision to stay his paternity action in favor of the adoption proceedings. According to respondent, an

*v Robertson*, 463 US 248, 267-268; 103 S Ct 2985; 77 L Ed 2d 614 (1983); *Quilloin v Walcott*, 434 US 246, 255-256; 98 S Ct 549; 54 L Ed 2d 511 (1978).

adoption petition should not be allowed to interfere with a putative father's attempt to establish paternity or his constitutional right to a relationship with his child, particularly when the paternity claim is filed before the adoption petition. Petitioners and Keilman argue that the rights of a putative father may be properly adjudicated under the Adoption Code, particularly MCL 710.39, and that giving paternity actions priority over adoption proceedings would impede the speedy resolution of adoptions, subjugate the rights of adoptees to those of putative fathers, and permit putative fathers to thwart adoption efforts.

"The Fourteenth Amendment provides that no State shall deprive any person of life, liberty, or property without due process of law," *Lehr v Robertson,* 463 US 248, 256; 103 S Ct 2985; 77 L Ed 2d 614 (1983), and the United States Supreme Court has recognized that "the relationship between parent and child is constitutionally protected," *Quilloin v Walcott,* 434 US 246, 255; 98 S Ct 549; 54 L Ed 2d 511 (1978). It is noteworthy, however, that respondent is not a legal parent because he has not yet perfected paternity and " 'the mere existence of a biological link' does not necessarily merit constitutional protection." *Bay Co Prosecutor v Nugent,* 276 Mich App 183, 193; 740 NW2d 678 (2007), quoting *Lehr,* 463 US at 261. Further, "there has yet to be any determination in this state that a putative father of a child born out of wedlock, without a court determination of paternity, has a protected liberty interest with respect to the child he claims as his own." *Nugent,* 276 Mich App at 193. One exception is when a putative father has established a custodial or supportive relationship under MCL 710.39(2). See *In re BKD,* 246 Mich App at 221-222. In this case, Judge Shelton determined that respondent failed to establish such a relationship.

Petitioners and Keilman correctly assert that adoption proceedings must be completed as quickly as possible and, in general, be given priority on the court's docket. See MCL 710.21a(c) and (d); MCL 710.25(1). But the Legislature created an exception to this general rule in MCL 710.25(2), which states that "[a]n adjournment or continuance of a proceeding under this chapter shall not be granted without a showing of good cause." Furthermore, while petitioners and Keilman are correct that the Adoption Code generally protects the parental rights of putative fathers, see *In re BKD*, 246 Mich App at 221-222, there may be circumstances in which a putative father makes a showing of good cause to stay adoption proceedings in favor of a paternity action. For example, in cases such as this, where there is no doubt that respondent is the biological father, he has filed a paternity action without unreasonable delay, and there is no direct evidence that he filed the action simply to thwart the adoption proceedings, there is good cause for the court to stay the adoption proceedings and determine whether the putative father is the legal father, with all the attendant rights and responsibilities of that status. Upon a motion to stay adoption proceedings, the trial court must make a good cause determination based on the particular circumstances of the case.

In so holding, we do not intend to create a "race to the courthouse," where a paternity action takes precedence over an adoption proceeding merely because the paternity action was filed first; rather, the timing of a paternity claim is but one factor to be considered in determining whether there is good cause under MCL 710.25(2) to stay adoption proceedings. Furthermore, while a stated purpose of the Adoption Code is to "safeguard and promote the best interests of each adoptee," upholding the rights of the adoptee as paramount to those of any other, see MCL 710.21a(b), the

general presumption followed by courts of this state is that the best interests of a child are served by awarding custody to the natural parent or parents, see, e.g., *Hunter v Hunter*, 484 Mich 247, 279; 771 NW2d 694 (2009) (holding that "the established custodial environment presumption in MCL 722.27[1][c] must yield to the parental presumption in MCL 722.25[1]"). Thus, giving a paternity action priority over an adoption proceeding does not necessarily conflict with protecting the best interests of the child.

In this case, respondent established good cause for delaying the adoption proceedings in favor of his paternity action. There was never any genuine dispute that respondent was the child's biological father. He wished to be present for the child's birth, to be named on the child's birth certificate, and to sign an affidavit of parentage, if Keilman had agreed. At the hearing on respondent's motion to stay the adoption proceedings, he presented DNA test results establishing a 99.99 percent probability that he was the child's father. Moreover, there was no unreasonable delay in respondent's attempt to establish paternity. This is not a case in which a putative father delayed filing a paternity action for many months or years, or until an adoption petition had already been filed. To the contrary, respondent filed a notice of intent to claim paternity before the child's birth. He filed his paternity action shortly after the birth and before petitioners filed their adoption petition. Considering the timing of respondent's paternity claim, along with his efforts to provide support and prepare for fatherhood by taking parenting classes and working with social services, there is little merit to the argument that he filed his paternity action simply to thwart Keilman's adoption plan.

In sum, while adoption proceedings must, in general, take precedence over other actions, such proceedings

may be stayed upon a showing of good cause. Here, respondent established good cause to stay the adoption proceedings in favor of his paternity action. Judge Shelton erred by denying respondent's motion to stay and proceeding with the § 39 hearings without first determining the issue of paternity. The August 6, 2008, order denying respondent's motion and March 18, 2009, order denying respondent custody must be vacated.

### III. RESPONDENT'S MOTION TO DISQUALIFY THE TRIAL COURT JUDGE

Respondent further argues that Judge Shelton should have been disqualified and that this case should be assigned to a different judge on remand. Respondent argues that Judge Shelton demonstrated bias against him and violated his due process rights. We disagree.

Respondent filed a motion to disqualify Judge Shelton on April 23, 2009, which Judge Shelton and the chief judge of the circuit denied. The motion was supported by the affidavit of respondent. We review a trial court's factual findings regarding a motion for disqualification for an abuse of discretion and its application of the facts to the law de novo. *In re Contempt of Henry*, 282 Mich App 656, 679; 765 NW2d 44 (2009). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Moore v Secura Ins*, 482 Mich 507, 516; 759 NW2d 833 (2008).

MCR 2.003 provides the procedure and noninclusive list of grounds for the disqualification of a trial court judge.[6] MCR 2.003(C)(1) (now [D][1]) states:

---

[6] MCR 2.003 was amended on November 25, 2009, at which time the sections were renumbered. Even under the amended court rule, including the addition of MCR 2.003(C)(1)(b), respondent has failed to establish a basis for disqualification of Judge Shelton.

> *Time for filing.* To avoid delaying trial and inconve-
> niencing the witnesses, a motion to disqualify must be filed
> within 14 days after the moving party discovers the ground
> for disqualification. If the discovery is made within 14 days
> of the trial date, the motion must be made forthwith. If a
> motion is not timely filed, untimeliness, including delay in
> waiving jury trial, is a factor in deciding whether the
> motion should be granted.

MCR 2.003(B)(1) stated at the time relevant to this
action that a trial court judge "is disqualified when the
judge cannot impartially hear a case," including when
the "judge is personally biased or prejudiced for or
against a party or attorney." See present MCR
2.003(C)(1)(a).

Initially, we find that respondent's motion for dis-
qualification was untimely. As indicated, MCR
2.003(C)(1) (now [D][1]) requires that a motion to
disqualify "be filed within 14 days after the moving
party discovers the ground for disqualification," and
provides that "untimeliness . . . is a factor in deciding
whether the motion should be granted." Respondent
argues that Judge Shelton demonstrated bias against
him by denying every motion he filed, but that the
"final blow" was the judge's April 22, 2009, order
stating that custody would be determined under MCL
710.62. Thus, according to respondent, his April 23,
2009, motion for disqualification was timely filed. But
we agree with the chief judge of the circuit that respon-
dent knew or should have discovered the alleged ground
for disqualification when Judge Shelton issued the
March 18, 2009, order denying him custody. The judge
denied respondent custody pursuant to his finding that
it was not in the child's best interests and, at that point,
respondent had no prospects for gaining custody. More-
over, Judge Shelton announced his decision to deter-
mine custody under MCL 710.62 on April 8, 2009,

several days before he issued the April 22, 2009, order memorializing his decision. Therefore, we find it disingenuous for respondent to argue that the April 22, 2009, order was truly the "final blow" triggering the 14-day period to file a motion for disqualification. Additionally, we disagree with respondent's assertion that his due process ground for disqualification should not be subject to the time limitation. Because respondent's motion for disqualification was filed more than 14 days after he knew or should have discovered the alleged bases for disqualification, it was untimely and was, therefore, properly denied. See *Band v Livonia Assoc*, 176 Mich App 95, 118; 439 NW2d 285 (1989).

Moreover, regardless of the timing of respondent's motion, we find that respondent failed to establish a ground for disqualification. Respondent has not established that Judge Shelton is biased or prejudiced against him under MCR 2.003(B)(1) (now [C][1][a]). A trial judge is presumed to be impartial and the party who asserts partiality has a heavy burden of overcoming that presumption. *Cain v Dep't of Corrections*, 451 Mich 470, 497; 548 NW2d 210 (1996). A showing of prejudice usually requires that the source of the bias be in events or information outside the judicial proceeding. *Id.* at 495-496. Disqualification on the basis of bias or prejudice cannot be established merely by repeated rulings against a litigant, even if the rulings are erroneous. *In re Contempt of Henry*, 282 Mich App at 680. Further, while personal animus toward a party requires disqualification, *People v Lobsinger*, 64 Mich App 284, 290-291; 235 NW2d 761 (1975), respondent contends that Judge Shelton's bias is toward young biological fathers who desire to raise their children. A generalized hostility toward a class of claimants does not present disqualifying bias. *People v Wade*, 283 Mich App 462, 470; 771 NW2d 447 (2009), rev'd on other grounds 485

Mich 986 (2009). Further, a trial judge's remarks made during trial, which are critical of or hostile to counsel, the parties, or their cases, ordinarily do not establish disqualifying bias. *Schellenberg v Rochester Elks*, 228 Mich App 20, 39; 577 NW2d 163 (1998).

Due process principles require disqualification, absent a showing of actual bias or prejudice, "in situations where experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable," such as situations when the judge has a pecuniary interest in the outcome, has been the target of personal abuse or criticism from a party, is enmeshed in other matters involving a party, or has previously participated in the case as an accuser, investigator, fact-finder, or initial decisionmaker. *Cain*, 451 Mich at 498 (quotation marks, emphasis, and citations omitted); see also present MCR 2.003(C)(1)(b). Disqualification pursuant to the Due Process Clause is only required "in the most extreme cases." *Cain*, 451 Mich at 498. In this case, Judge Shelton's basis for proceeding with this case and applying the standards for terminating a putative father's rights was not without a reasonable basis. In and of itself, the judge's actions were not reflective of a high probability of bias to the extent that due process principles required disqualification. Accordingly, respondent's motion for disqualification was properly denied.

Given our conclusion regarding the first issue, we need not address the remaining issues raised by the parties on appeal.[7]

---

[7] If respondent perfects his legal paternity, the adoption case may not proceed, and the other issues raised on appeal will be rendered moot. As set forth in MCL 710.31(1):

Except as provided in section 23d of this chapter, if a child is born out of wedlock and the release or consent of the biological

We vacate the trial court's August 6, 2008, and March 18, 2009, orders and remand to allow respondent's related paternity case to proceed. We do not retain jurisdiction.

father cannot be obtained, the child shall not be placed for adoption until the parental rights of the father are terminated by the court as provided in section 37 or 39 of this chapter, by the court pursuant to chapter XIIA [MCL 712A.1 *et seq.*], or by a court of competent jurisdiction in another state or country.