# STATE OF MICHIGAN

# COURT OF APPEALS

AARON DUMM II,

Plaintiff-Appellee,

v

JIM BROWN, also known as A.J. BROWN,

Defendant-Appellant.

UNPUBLISHED
April 17, 2018

No. 336344
Lenawee Circuit Court
LC No. 15-005315-CZ

Before: BOONSTRA, P.J., and BECKERING and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals by right the trial court's judgment, following a bench trial, awarding plaintiff $30,666, plus costs and attorney fees. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arose from a dispute between plaintiff and his father, Aaron F. Dumm, Sr. (commonly known as "Fred") regarding certain assets of AED Enterprises, LLC ("AED") d/b/a B.A.R. Recycling. AED was a junkyard business, owned by Fred and his now deceased wife Elizabeth (plaintiff's mother), at which plaintiff also worked. In 2010, Fred and Elizabeth created a Joint Living Revocable Trust to receive and manage AED's assets. Plaintiff was the primary beneficiary of the trust. AED's principal place of business was located at 1014 East Erie Street in Adrian, Michigan ("the Erie Street property"). AED leased the Erie Street property from defendant. Between 2011 and 2013, Fred and Elizabeth both sustained a series of debilitating injuries. As a result of his parents' need for care, plaintiff planned to downsize the business by limiting its operations to "nonferrous" recycling and relocating it to a smaller property. In the summer of 2013, AED ceased operations. An appraisal and auction firm, R.J. Montgomery and Associates ("R.J. Montgomery"), auctioned off items of personal property belonging to AED. In June 2013, plaintiff moved several items from the Erie Street property to property owned by plaintiff's friend, Glenn Sliker.[1]

---

[1] The items included antique automobiles and tractors in various states of disrepair, vehicle parts, and equipment.

Contemporaneously with the downsizing and auction, the relationship between plaintiff and Fred became strained. Plaintiff, who possessed a medical power of attorney over Fred at the time, attributed this strain to the fact that he had resisted Fred's desire to disregard medical advice for continued inpatient rehabilitation treatment. In June 2013, Fred and Elizabeth sent plaintiff a letter revoking "all power of attorney privileges" that had been given to plaintiff, including authority over "our personal estate, medical power of attorney, the Living Trust of the business Bar [sic] Recycling, AED Enterprises and any other business that we own or control." Plaintiff filed a petition for conservatorship over Fred and Elizabeth's estate in the probate court. The probate court denied the petition after finding that plaintiff had failed to prove that Fred and Elizabeth were not competent to manage their affairs. Plaintiff also filed suit asking the probate court to determine the ownership of trust assets. That litigation proceeded.

Fred informed defendant in July 2013 that AED intended to vacate the Erie Street property. Fred did not pay the remaining rent due under the lease. In October 2013, Fred directed a former employee, Kenneth McKimmy, to transport the items that plaintiff had previously moved to Sliker's property back to the Erie Street property. McKimmy did as Fred instructed. Defendant testified that this was done without his knowledge or consent. In December 2013 and January 2014, R.J. Montgomery appraised AED's remaining assets at the Erie Street property and issued an appraisal report. In May 2014, Robert Best conducted a facilitative mediation to resolve outstanding issues in the probate court proceeding. Plaintiff and Fred entered into a Binding Mediation Agreement ("the Agreement") that provided, in pertinent part:

This case is settled on the following terms:

**Fred Shall Receive:**

**1)**  Elizabeth's Engagement Diamond from Masonic Ring

2)  Masonic Sword

3)  Gold Pocket Watch – Hunt scene on it

4)  20 gauge shot gun

5)  Mom's 22 rifle.

[Plaintiff] shall keep all other items except for those items in Fred's possession.

However, it should be noted that the following items are gone and consequently not part of the settlement:

1)  2002 Case 60XT skid steer loader with grapple bucket;

2)  1998 Freightliner FLD 120 tandem axle semi truck;

3) 1979 Transcraft MDL, DTL-25-42, 42' tandem axle drop deck trailer with air ride suspension; and

4) 1999 Dodge Durango SLT

It should also be noted that the following items are owned by [defendant] and consequently not part of the settlement:

1) Clausing drill press head; and

2) General Hydraulic 5' x 30" vertical baler.

[Plaintiff] shall pay 50% of mediator's fees and expenses and remaining 50% will be paid by Fred (from Attorney Smith's Trust account).

Case shall be dismissed with prejudice and without costs. Final documents to be filed with the court by June 15, 2014.

A second page with the heading "Mediation Proposal on May 31, 2014, at 1:00 p.m." is attached to the Agreement. This page lists 16 items under the subheading "Fred Shall Receive," comprised of the five items listed for Fred on the Agreement and 11 additional items (tools, vehicles, and vehicle parts) that are crossed out. Consistent with the Agreement, the next line states, "[plaintiff] shall keep all other items except for those items in Fred's possession." The proposal lists the same four missing ("gone") items and the same two items for defendant that are listed in the Agreement. Plaintiff and Fred then stipulated to the dismissal of the probate court action.

Plaintiff attempted to retrieve certain items from the Erie Street property, claiming ownership of the items based on the provision in the Agreement that awarded him "all other items except for those items in Fred's possession." According to plaintiff, defendant refused to allow him to retrieve the items unless he first cleared away other debris from the Erie Street property. Plaintiff denied that he had any obligation to clear the debris because he was not a party to the lease between AED and defendant. Plaintiff filed a small claims complaint against defendant in the district court, alleging that defendant had refused to surrender items that were awarded to plaintiff under the Agreement. Defendant failed to appear in the action and the district court issued a default judgment in favor of plaintiff; it later granted defendant's motion to set aside the default judgment. After the judgment was set aside, defendant petitioned to remove the district court case from the small claims division of that court, alleging that plaintiff had left unusable tires and other debris on defendant's property, preventing him from leasing the property to another tenant. Defendant also contended that he had sought to mitigate damages by moving the disputed items to a warehouse on the same property, and he counter-sued for unpaid rent and storage fees.

Plaintiff amended his complaint to allege a claim of conversion.[2] Plaintiff also requested an award of treble damages,[3] as a result of which plaintiff's claim exceeded the $25,000 jurisdictional limit of the district court. The case then was transferred to the circuit court. Plaintiff alleged that defendant was aware of the "mediation result" of the probate court proceeding and had wrongfully denied him access to the Erie Street property to retrieve the disputed items that had been awarded to him under the Agreement. Plaintiff also alleged that defendant had moved the disputed items from a sheltered area and exposed them to weather, thereby causing damage to them. Plaintiff sought treble damages under MCL 600.2919a(1)(a). Before trial, defendant moved to disqualify the trial court judge, alleging that she had engaged in an ex parte communication with plaintiff's counsel indicating that she had already decided that defendant was liable for conversion and that the only issue was the amount of damages. The trial court denied defendant's motion, stating:

> I have considered the facts and circumstances of the motion and cannot attribute or recollect independent any such statement [that the only issue at trial would be the amount of damages], nor do I find any evidence that such a statement was made, nor, after reviewing the file, am I of the opinion that it's just a matter of damages. That having been said, the Court would deny the motion to disqualify herself accordingly. I've not heard any basis, nor do I have any personal or independent recollection or claim after a serious review of the file that it would be appropriate. If there's nothing else to be said on that, I would enter my order accordingly.

On the first day of the bench trial, defendant agreed to the dismissal of his counterclaim. Following the trial, the trial court held that the disputed items were plaintiff's property under the Agreement, that defendant had converted the items, which were valued at $10,222, and that plaintiff was entitled to treble damages in the amount of $30,666, plus costs and attorney fees.

Defendant moved for a new trial, again arguing that the trial court judge should have been disqualified because of ex parte contact with plaintiff's counsel, and that the trial court's decision was against the great weight of the evidence. The trial court denied defendant's motion. This appeal followed.

---

[2] The amended complaint did not clearly indicate whether plaintiff was alleging common-law conversion or statutory conversion, MCL 600.2919a. The count was simply labeled "Conversion," and it both referenced MCL 600.2919a and additionally employed language that is consistent with common-law conversion. But statutory conversion "is rooted in common-law conversion," and adds an "additional statutory requirement that the conversion was to the other person's 'own use.'" *Aroma Wines & Equip, Inc v Columbian Distrib Servs, Inc*, 497 Mich 337, 357, 361; 871 NW2d 136 (2015). We will therefore treat plaintiff's claim, as the trial court did, as one for statutory conversion.

[3] Treble damages are available for statutory conversion. MCL 600.2919a(1).

## II. STATUTORY CONVERSION

Defendant argues that the trial court erred by finding that he had converted property belonging to plaintiff, and also in determining the value of the disputed items. We disagree. "This Court reviews de novo the trial court's conclusions of law made during a bench trial." *Commonwealth Land Title Ins Co v Metro Title Corp*, 315 Mich App 312, 315; 890 NW2d 395 (2016). The trial court's factual findings are reviewed for clear error. *Trahey v City of Inkster*, 311 Mich App 582, 593; 876 NW2d 582 (2015). "A finding is clearly erroneous if there is no evidentiary support for it or if this Court is left with a definite and firm conviction that a mistake has been made." *Id.* (citation and quotation marks omitted). To the extent that this issue requires interpretation of a contract, the proper interpretation of a contract presents a question of law, which we review de novo. *Innovation Ventures v Liquid Manufacturing*, 499 Mich 491, 507; 885 NW2d 861 (2016).

"Common law conversion . . . consists of any 'distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein.' " *Dep't of Agriculture v Appletree Marketing, LLC*, 485 Mich 1, 14; 779 NW2d 237 (2010) (footnote and citations omitted). "Conversion may occur when a party properly in possession of property uses it in an improper way, for an improper purpose, or by delivering it without authorization to a third party." *Id.*

As noted, statutory conversion "is rooted in common-law conversion," and adds an "additional statutory requirement that the conversion was to the other person's 'own use.' " *Aroma Wines & Equip, Inc v Columbian Distrib Servs, Inc*, 497 Mich 337, 357, 361; 871 NW2d 136 (2015). Statutory conversion is governed by MCL 600.2919a, which provides:

> (1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorneys' fees:
>
> (a) Another person's stealing or embezzling property or converting property to the other person's own use.
>
> (b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.
>
> (2) The remedy provided by this section is in addition to any other right or remedy the person may have at law or otherwise.

Pertinent to MCL 600.2919a(1)(a), therefore, statutory conversion requires, in addition to proof of common-law conversion, a showing that the defendant converted the property "to [his] own use." Our Supreme Court has interpreted that language to mean that the defendant "employed the converted property for some purpose personal to the defendant's interests, even if that purpose is not the object's ordinarily intended purpose." See *Aroma Wines* 497 Mich at

358-359. The act of moving the property in a manner that is inconsistent with a contract may satisfy this requirement. *Id*. at 360. So too may conduct that damages or destroys the property. *Id*. at 359, citing *Kreiter v Nichols*, 28 Mich 496, 498-499 (1874).

Defendant argues that the evidence did not support a finding that he had converted plaintiff's property because plaintiff's ownership of the disputed items was a factual issue that was not resolved in the probate court proceeding. In that case, the parties stipulated to dismiss the action based on the Agreement. A mediation agreement is analogous to a settlement agreement and is construed in the same manner as a contract. *Reicher v SET Enterprises Inc*, 283 Mich App 657, 665; 770 NW2d 902 (2009). "Absent an ambiguity or internal inconsistency, contractual interpretation begins and ends with the actual words of a written agreement." *Innovation Ventures*, 499 Mich at 507 (citation and quotation marks omitted). This Court must "examine the language of a contract according to its plain and ordinary meaning," and give effect "to the parties' intention at the time they entered into the contract." *Id*. (citation and quotation marks omitted). Extrinsic evidence may be used, however, to ascertain the parties' intent when the contract" is expressed in short and incomplete terms, or is fairly susceptible of two constructions, or where the language employed is vague, uncertain, obscure, or ambiguous. . . ." *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 470; 663 NW2d 447 (2003) (citation and quotation marks omitted).

The Agreement provided that plaintiff "shall keep all other items except for those items in Fred's possession." This provision is not unclear or ambiguous. The Agreement pertained to the division of AED assets held in trust. The Agreement specifically stated which items were awarded to Fred, which items were missing, and which items were owned by defendant. Plaintiff was awarded "all other items except for those items in Fred's possession." The remaining items not in Fred's possession were therefore the property of plaintiff. The items located on defendant's Erie Street property were not in Fred's possession. These were AED assets that plaintiff had previously transported to Sliker's property, but that were returned to the Erie Street property after Fred had surrendered possession of the Erie Street property to defendant. Fred brought the subject items to the Erie Street property without defendant's knowledge or consent. Fred testified that he intended (presumably acting on behalf of AED) to give defendant the items as compensation toward AED's rent arrearage, but defendant disputed that claim. On the contrary, defendant testified that Fred had delivered the items to the Erie Street property without his permission.

Fred did not claim that the disputed items were in his possession or that he was therefore entitled to them under the Agreement. The gist of his testimony was that the items were no longer AED's property at the time of the appraisal and mediation, having already been given to defendant, and thus could not be distributed under the Agreement. At one point, Fred testified, "I abandoned the property. I abandoned all the assets on the property that was owned by AED. It went to [defendant] through an abandonment, yes." However, Fred also testified as follows on cross-examination:

> *Q*. So that property was never part of the mediation then.
>
> *A*. The what?

*Q.* The property that you gave back to [defendant] --

*A.* Yeah.

*Q.* - - was never even part of the mediation

*A.* Yes, it was.

*Q.* How was it part of --

*A.* Well, how wasn't it?

*Q.* Did you give it – did you give that property that you had taken back to [defendant] to [the Erie Street property]? This – you testified that you had Kenny McKimmy take stuff from Glenn Sliker's back to Erie Street --

*A.* Um-hum.

*Q.* – is that correct?

*A.* He took it back. Yeah. I hired him to do it.

*Q.* And you testified that you abandoned that property once you gave Jim Brown the keys.

*A.* Yes.

*Q.* So if you abandoned the property, it wasn't part of the mediation agreement.

*A.* I don't know what you call it. I don't know what we had a mediation for then.

The trial court did not find Fred's confused and at times contradictory testimony to provide credible support for the claim that the disputed items were not subject to the Agreement. This Court defers to a trial court's determinations regarding witness credibility at a bench trial. MCR 2.613(C).

Further, even defendant disagreed that Fred had surrendered the disputed items to him as compensation for unpaid rent before the Agreement was executed, in which case the items might no longer have been considered to be Fred's property subject to distribution under the Agreement. And defendant stated that he could not dispose of the vehicles because he did not have title to them. Therefore, defendant's own testimony does not support the conclusion that the items no longer belonged to AED at the time of the mediation.

Moreover, according to plaintiff, when he went to defendant's property to retrieve the items that had been awarded to him under the Agreement, defendant did not dispute that the items belonged to plaintiff, but instead would not allow plaintiff to retrieve the items until he

first cleaned up other debris on the property. In light of plaintiff's testimony, Fred's agreement that the disputed items were part of the mediation and were no longer in his possession at the time the Agreement was executed, and defendant's testimony disavowing his ownership of the items or that he had received possession of the items as compensation for unpaid rent, the trial court's finding that plaintiff acquired ownership of the items under the Agreement is not clearly erroneous. *Trahey*, 311 Mich App at 593.

Further, although defendant argues that the disputed items were placed on his Erie Street property without his knowledge or permission, the record shows that he at some point became aware of the items. Moreover, defendant exercised dominion over the disputed items, despite his awareness that they were not his, in disregard of plaintiff's ownership rights, by denying plaintiff access to the Erie Street property to retrieve the items, and by moving the items to a location where they became damaged by exposure to weather. See *Aroma Wines*, 497 Mich at 358-359. Defendant argues that the evidence did not establish that he had denied plaintiff access to the Erie Street property to retrieve the items. He instead states that he required plaintiff first to clear other debris from the premises when plaintiff came to collect the disputed items, so that plaintiff would not take the valuable items while leaving worthless trash on defendant's property. Defendant testified, "I said he'd have to clean it up before I'd have somebody move the things out of his way." Plaintiff testified that defendant told him that he "could start with cleaning up the mess first, but he wasn't giving me my stuff until I cleaned up the mess." Defendant also demanded back payment of rent, despite the fact that plaintiff was not a party to the lease agreement with AED. But plaintiff was not a party to the lease agreement, and therefore had no obligation to repair or restore the premises, or any obligation to pay rent under the lease agreement. Accordingly, the trial court did not clearly err by finding that defendant improperly denied plaintiff access to his property, or that he converted it to his own use. *Aroma Wines*, 497 Mich at 359; *Trahey*, 311 Mich App at 593.

In sum, the trial court did not err by finding that defendant was liable to plaintiff for statutory conversion. MCL 600.2919a; see also *Aroma Wines* 497 Mich at 359-360.

Defendant also argues that, even if he is liable for statutory conversion, the evidence did not support the trial court's finding that the converted items had a value of $10,222. We disagree. The trial court's determination of damages following a bench trial is reviewed for clear error. *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 513; 667 NW2d 379 (2003). Defendant cites the testimony of attorney Dale Smith (who represented Fred in the probate court action) that R.J. Montgomery's appraisal list was not accurate because, by the time of mediation, most of the items left at the Erie Street property were of little or no value. However, plaintiff testified on rebuttal that, before the mediation, he updated the appraisal list compiled by R.J. Montgomery, and he also introduced exhibit evidence to accurately state the updated values of the disputed items located at the Erie Street property. Defendant does not challenge the admission of this evidence, but instead argues that Smith's testimony was the only reliable evidence concerning value. Ultimately, the trial court credited the evidence introduced by plaintiff, based on the mediation appraisal, over Smith's testimony. MCR 2.613(C). Plaintiff's evidence supports the trial court's findings regarding damages. Accordingly, the trial court did not clearly err in its determination of damages. *Krol*, 256 Mich App at 513.

### III. DISQUALIFICATION OF TRIAL COURT JUDGE

Defendant also argues that the trial court judge erred by denying his motion for disqualification and motion for new trial because of the judge's alleged ex parte contact with plaintiff's counsel. We disagree. "We review a trial court's factual findings regarding a motion for disqualification for an abuse of discretion and its application of the facts to the law de novo." *In re MKK*, 286 Mich App 546, 564; 781 NW2d 132 (2009). An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Id*. (quotation marks omitted).

Defendant moved to disqualify the trial court judge under MCR 2.003(D), on the ground that the judge had allegedly engaged in an improper ex parte communication with plaintiff's counsel in which she allegedly told counsel that defendant's liability had been established, and that the only remaining question to be determined was the amount of damages. Defendant's motion was based on a question posed by plaintiff's counsel to defendant at defendant's deposition. Plaintiff's counsel asked defendant about testimony that he previously had given to the effect that he had expected plaintiff to compensate him for storing the disputed items. Defendant responded that he would have to read the transcript. Plaintiff's counsel then continued the questioning as follows:

> *Q*. Are you aware that the judge has already indicated that the only issue in this case are [sic] the damages that would be paid to Aaron Dumm?
>
> *A*. Am I aware of what?
>
> *Q*. That the judge has already said in response to your Motion for Summary Disposition that the only issue --
>
> *A*. Right now which judge are we talking about?
>
> *Q*. We're talking about Judge Noe?
>
> *A*. Okay. Go ahead.
>
> *Q*. That the only issue in this case are the damages that would be paid to Aaron Dumm?
>
> *A*. No. I didn't hear that at all.

In his motion for disqualification, defendant argued that the question, "Are you aware that the judge has already indicated . . ." demonstrated that an improper ex parte communication had occurred between plaintiff's counsel and the trial court judge. Plaintiff argued in response that the deposition question "was, at worst, an unartfully [sic] worded question."

At the hearing on defendant's motion, the trial court denied any recollection of such a statement, or having seeing any evidence that she had made such a statement, and denied believing that the only issue for trial was the amount of damages owed to plaintiff. Accordingly, she denied the motion for disqualification.

Defendant raised the disqualification issue again in a motion for a new trial. Defendant repeated his assertion that plaintiff's counsel's question indicated that the trial court judge had already decided that defendant was liable. He also alleged that there was "Ex-Parte contact by the attorney for the Plaintiff, with the Court regarding the issue of Defendant's Trial Brief." In again denying defendant's motion, the trial court judge stated:

> As to any ex-parte communication, I think that Plaintiff more accurately sets forth the information exchanged with regard to a trial brief that took place in her presence in my office, and an attempt was made to contact counsel. Beyond the nature of scheduling and of the receipt of both documents, it all had to do procedurally and really had nothing to do with any substance. And I recall that independent as to that matter. Any other claim of contact didn't exist. I have no recollection. My office regularly schedules, as you both know, without any impart [sic] from me. And if I did impart anything, it would've been to my secretary and it would've been as to scheduling matters or receipt of briefs so that I could be fully prepared for trial.

"We review a trial court's factual findings regarding a motion for disqualification for an abuse of discretion and its application of the facts to the law de novo." *In re MKK*, 286 Mich App 546, 564; 781 NW2d 132 (2009). An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Id*. (quotation marks omitted).

Grounds for disqualification are listed in MCR 2.003(C), which provides, in pertinent part:

> (1) Disqualification of a judge is warranted for reasons that include, but are not limited to, the following:

> (a) The judge is biased or prejudiced for or against a party or attorney.

> (b) The judge, based on objective and reasonable perceptions, has either (i) a serious risk of actual bias impacting the due process rights of a party as enunciated in *Caperton v Massey*, 556 US 868; 129 S Ct 2252; 173 L Ed 2d 1208 (2009), or (ii) has failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct.

A party claiming judicial bias "must overcome a heavy presumption of judicial impartiality." *People v Jackson*, 292 Mich App 583, 598; 808 NW2d 541 (2011) (citation and quotation marks omitted). With respect to ex parte communications, the Michigan Code of Judicial Conduct, Canon 3(A)(4) provides:

> A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding, except as follows:

(a) A judge may allow ex parte communications for scheduling, administrative purposes, or emergencies that do not deal with substantive matters or issues on the merits, provided:

(*i*) the judge reasonably believes that no party or counsel for a party will gain a procedural or tactical advantage as a result of the ex parte communication, and

(*ii*) the judge makes provision promptly to notify all other parties and counsel for parties of the substance of the ex parte communication and allows an opportunity to respond.

Defendant fails to cite any evidence showing that the trial court judge was biased, or that she had made any statement indicating that she had already decided the issue of defendant's liability in plaintiff's favor. The question by plaintiff's counsel during defendant's deposition did not refer to any prior ex parte communication with the trial court judge, and the judge denied that any such communication had taken place. The judge acknowledged that plaintiff's counsel may have contacted the court office about administrative matters, but that does not establish improper contact. The trial court did not abuse its discretion in denying defendant's motion for disqualification or his motion for new trial.

Affirmed.

/s/ Mark T. Boonstra
/s/ Jane M. Beckering
/s/ Amy Ronayne Krause