# STATE OF MICHIGAN

# COURT OF APPEALS

In re J. L. THOMAS, Minor.

UNPUBLISHED
August 14, 2018

No. 342183
Wayne Circuit Court
Family Division
LC No. 17-000220-NA

Before: SWARTZLE, P.J., and CAVANAGH and M. J. KELLY, JJ.

PER CURIAM.

Respondent appeals by right the trial court order terminating the "unknown biological father's" parental rights to the minor child under MCL 712A.19b(3)(c) (conditions that led to adjudication continue to exist or conditions that caused the child to come within the court's jurisdiction have not been rectified), 3(g) (failure to provide proper care and custody), 3(h) (parental imprisonment), and 3(i) (sibling parental right termination). We affirm.

On August 19, 2017, the Department of Health and Human Services (DHHS) petitioned for removal of the minor child, JT, from the mother's care and termination of parental rights due to the mother's incarceration at the time of JT's birth. The petition also named respondent as JT's putative father. JT's mother and respondent were both incarcerated for second-degree murder. JT was placed with his maternal grandfather. JT's mother's rights to two other children had previously been terminated. JT's half-siblings were also placed with JT's maternal grandfather.

Respondent was present via speakerphone at a pretrial on September 20, 2017. Respondent had not established paternity for JT, and when asked if he "ha[d] any interest" in JT, respondent stated, "I'm not saying the child is mine or isn't mine. But before I say that he is or isn't, I would like a DNA test before we move any further." A DNA test at DHHS expense was ordered and the referee stated that the termination trial would be adjourned if a DNA test was not yet available on the date of the termination trial.

At the termination trial on November 16, 2017, JT's mother was present via video, and respondent was present via telephone. Respondent did not speak throughout the trial. The referee found that JT was without proper care and custody because JT's mother was to be incarcerated for at least 10 years and because "no man ha[d] established paternity." The referee found that "[t]he father of the child [was] unknown and unidentifiable." The referee found that termination of parental rights was in the child's best interests because JT's mother could not provide a home for him due to her incarceration and JT was placed in "the only stable permanent

-1-

home that he [had] known since birth." An order terminating the parental rights of JT's mother and the "unknown biological father" was subsequently entered.

On appeal, respondent argues that his due process rights were violated because the trial court failed to provide him with a DNA test, failed to adjourn the trial pending the results of a DNA test, found statutory grounds for termination before respondent completed a DNA test, and found that termination was in the child's best interests before respondent completed a DNA test. We disagree.

Respondent did not raise these arguments in the trial court; accordingly, these issues are not preserved. See *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). This Court reviews unpreserved claims for plain error affecting substantial rights. *Id*.

MCR 3.903(A)(18) defines "parent" as "the mother, the father as defined in MCR 3.903(A)(7), or both, of the minor." MCR 3.903(A)(7) defines "father" as:

(a) A man married to the mother at any time from a minor's conception to the minor's birth, unless a court has determined, after notice and a hearing, that the minor was conceived or born during the marriage, but is not the issue of the marriage;

(b) A man who legally adopts the minor;

(c) A man who by order of filiation or by judgment of paternity is judicially determined to be the father of the minor;

(d) A man judicially determined to have parental rights; or

(e) A man whose paternity is established by the completion and filing of an acknowledgment of parentage . . . .

MCR 3.903(A)(24) defines "putative father" as "a man who is alleged to be the biological father of a child who has no father as defined in MCR 3.903(A)(7)."

"[T]here has yet to be any determination in this state that a putative father of a child born out of wedlock, without a court determination of paternity, has a protected liberty interest with respect to the child he claims as his own." *In re MKK*, 286 Mich App 546, 561; 781 NW2d 132 (2009) (quotation marks and citation omitted). However, a putative father may have a protected liberty interest with respect to the parent-child relationship if he has established a custodial or supportive relationship under MCL 710.39(2). *Id*.

In this case, respondent has not claimed JT as his child, nor has there been an order of filiation, a judgment of paternity, or an affidavit of parentage. Respondent never claimed to be JT's father. In fact, respondent denied that he was JT's father. There was nothing in the record to show that respondent has ever met JT or provided support for JT in any way. Accordingly, respondent is merely a putative father, MCR 3.903(A)(24), and he does not have a protected liberty interest with respect to JT, see *In re MKK*, 286 Mich App at 561. Respondent cites no

authority for his argument that the trial court was required to determine whether he was JT's legal father before terminating his parental rights. Likewise, respondent cites no authority for his arguments that his due process rights were violated because of the trial court's failure to order a DNA test, to adjourn the termination trial to obtain a DNA test, and by making findings on statutory grounds for termination and the child's best interests before a DNA test was completed. Respondent cannot merely announce his position and leave it up to this Court to rationalize the basis for his claim or to search for applicable authority in support of his position. See *In re TK*, 306 Mich App 698, 712; 859 NW2d 208 (2014) (citation omitted).

There is nothing in the record to indicate that respondent was in any way prevented from completing a DNA test or from requesting an adjournment of the termination trial. Respondent had nearly two months to complete the DNA test or to request an adjournment of the termination trial. Respondent was present at the termination trial by speakerphone, and there is nothing in the record to indicate that he was prevented from speaking. Respondent does not allege on appeal that petitioner or the referee in any way prevented him from completing a DNA test or from speaking at the termination trial. Respondent argues that he was prevented from meaningfully participating in the termination trial. However, nothing in the record indicates that respondent's rights as a putative father were violated.

Respondent briefly argues that the trial court should not have terminated his parental rights without giving him the opportunity to participate in services. However, petitioner is not required to provide services to a putative parent. *In re LE*, 278 Mich App 1, 18-19; 747 NW2d 883 (2008). Respondent also argues that termination should not have been considered in this case because JT was placed with a relative. However, placement of a child with relatives is only one factor to consider. MCL 712A.19a(8)(a). In this case, the referee acknowledged that placement with a relative usually weighs against termination, but found that termination was still in JT's best interests because he was with his siblings "in the only stable permanent home that he [had] known since his birth," JT's mother was incarcerated, and JT had no legal father.

Regardless, the trial court properly concluded that there was clear and convincing evidence to support termination of JT's mother's and the unknown biological father's parental rights, and that such termination was in JT's best interests. On appeal, respondent makes no substantive argument to the contrary. Accordingly, we find no plain error with regard to the trial court's decision to terminate parental rights to JT's "unknown biological father."

Affirmed.

/s/ Brock A. Swartzle
/s/ Mark J. Cavanagh
/s/ Michael J. Kelly

-3-