# STATE OF MICHIGAN

# COURT OF APPEALS

STEPHANI LARA YACHCIK, also known as
STEPHANI LARA WALLEN,

     Plaintiff-Appellant,

v

KRISTOPHER JON YACHCIK,

     Defendant-Appellee.

FOR PUBLICATION
February 28, 2017
9:00 a.m.

No. 333834
Alpena Circuit Court
Family Division
LC No. 05-000157-DM

Before: HOEKSTRA, P.J., and SAAD and RIORDAN, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court order (1) denying her motion to change the minor child's domicile from Michigan to Pennsylvania and (2) providing that, if plaintiff moves to Pennsylvania,[1] she will be awarded the same parenting time that she had proposed for defendant in conjunction with her motion. We affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND

Plaintiff and defendant married in June 2003. Their son, GY, was born during the first year of their marriage. The parties divorced in August 2005, agreeing to joint legal and physical custody of GY. After the divorce, both parties remained in the Alpena, Michigan area.

A short time later, defendant began dating Christina LeTourneau. The couple began living together when GY was approximately two years old. Plaintiff also had her own relationships.

In July 2012, plaintiff and defendant agreed to modify their parenting time arrangement so that each party would have parenting time on an alternating weekly basis. In August 2012,

---

[1] It is undisputed that plaintiff moved to Pennsylvania after the entry of the order at issue in this appeal.

-1-

plaintiff married her current husband, Benjamin Wallen, who lives and works near the New York/Pennsylvania border. He searched for employment in Michigan, but was unable to find a job with health insurance benefits comparable to those through his out-of-state job, which cover ongoing treatment for a rare form of cancer with which he is afflicted. Wallen's work schedule provides four days off every other weekend, which gives him an opportunity to visit plaintiff and GY in Michigan once every month or month and a half. Occasionally, plaintiff and GY have visited Wallen in Pennsylvania as well.

In January 2016, plaintiff filed a motion to change the child's domicile to Pennsylvania. She explained that she had found a job there,[2] and that she and her husband could save thousands of dollars in living expenses each year if they could consolidate their households and no longer pay for separate residences. She also proposed a parenting time schedule under which GY would stay with plaintiff and Wallen during the school year and visit defendant in Michigan "for Thanksgiving break, one week of Christmas break, spring break, and 10 weeks of summer break."

Defendant opposed the motion, contending that the move would not be beneficial to the child. He also requested that the trial court award him primary physical custody if plaintiff moves to Pennsylvania and ensure that the parenting time schedule is consistent with the best interests of the child if plaintiff moves away from the Alpena area.

The trial court held a hearing on plaintiff's motion in May 2016, taking testimony from plaintiff; Wallen; defendant; LeTourneau; the owner of the business that offered plaintiff a job in Pennsylvania; the director of admissions[3] from Notre Dame High School, a private Catholic school where plaintiff planned to send GY upon moving to Pennsylvania; and a Pennsylvania realtor who was working with plaintiff and Wallen. During her testimony, plaintiff proposed that defendant should receive parenting time during Thanksgiving break, half of Christmas break, all of spring break, and the entire summer break except for the first and last weeks if the court granted her motion. Plaintiff clearly indicated during the hearing that she intended to move to Pennsylvania regardless of the outcome of her motion to change the child's domicile. At the end of the hearing, the court took the matter under advisement, promising to issue a written opinion.

The trial court's opinion and order summarized the factual and procedural background of the case and stated the following as its decision and reasoning:

> MCL 722.31(4) controls the question of a legal residence change. That statutory provision requires this Court to determine whether the change in residence has the capacity to improve the quality of life for both the child and the relocating parent, but, placing primary focus on the child. It is clear from the testimony that [plaintiff's] life would improve greatly in both a financial sense

---

[2] Plaintiff had previously been self-employed "running the farm at [their] house," but the farm did not produce any significant profits.

[3] The director of admissions also serves as "the assistant principal of academic life."

and an emotional sense since her move to Pennsylvania would be uniting herself with her husband and gaining employment. But the proof involved with the improvement in the quality of life for [GY] is less clear. The Court is of the opinion that removing the child from this community where he has a large extended family into a community where he has no extended family is very much against his best interest. Additionally, the child has been going to the Alpena Public Schools since he became school[-aged] [and going] into a community where he knows not one so[ul] other than [plaintiff and Wallen] is also against his best interest. The proof concerning the superiority of the proposed school is not strong and fails to establish by a preponderance of evidence that the residence change has the capacity to improve the quality of life for the minor child.

For all of the foregoing reasons, this Court **DENIES** Plaintiff's Motion for Change of Residence for the minor child. In the event that the Plaintiff moves from the area to the state of Pennsylvania she is to enjoy the same parenting time schedule for herself that she proposed for [defendant] at the hearing in this cause. If she does not leave this area, the Order of week on week off will control custody and parenting time. This Court **FINDS** that there has been an established custodial environment in both homes for the minor child.

Subsequently, plaintiff filed a motion for reconsideration, which the trial court denied.

## II. STANDARD OF REVIEW

Pursuant to MCL 722.28, in child custody disputes, "all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." Accordingly, this Court reviews for an abuse of discretion a trial court's decision on whether to grant a motion for change of domicile and its decision on whether to change custody. *Fletcher v Fletcher*, 447 Mich 871, 879-880; 526 NW2d 889 (1994); *Sulaica v Rometty*, 308 Mich App 568, 577; 866 NW2d 838 (2014). "In this context, an abuse of discretion exists when the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Sulaica*, 308 Mich App at 577; see also *Fletcher*, 447 Mich at 879-880.

"In the child custody context, questions of law are reviewed for clear legal error. A trial court commits legal error when it incorrectly chooses, interprets, or applies the law." *Sulaica*, 308 Mich App at 577; see also *Fletcher*, 447 Mich at 876-877. The trial court's findings of fact are reviewed under the great weight of the evidence standard. *Fletcher*, 447 Mich at 878-879; see also *Rains v Rains*, 301 Mich App 313, 324; 836 NW2d 709 (2013). "This Court may not substitute [its] judgment on questions of fact unless the facts clearly preponderate in the opposite direction. However, where a trial court's findings of fact may have been influenced by an incorrect view of the law, our review is not limited to clear error." *Rains*, 301 Mich App at 324-325 (quotation marks and citations omitted; alteration in original).

"This Court reviews de novo the proper interpretation and application of statutes and court rules." *Brecht v Hendry*, 297 Mich App 732, 736; 825 NW2d 110 (2012).

A court's primary goal when interpreting a statute is to discern legislative intent first by examining the plain language of the statute. Courts construe the words in a statute in light of their ordinary meaning and their context within the statute as a whole. A court must give effect to every word, phrase, and clause, and avoid an interpretation that renders any part of a statute nugatory or surplusage. Statutory provisions must also be read in the context of the entire act. It is presumed that the Legislature was aware of judicial interpretations of the existing law when passing legislation. When statutory language is clear and unambiguous, courts enforce the language as written. [*Lee v Smith*, 310 Mich App 507, 509; 871 NW2d 873 (2015) (citations omitted).]

Additionally, it is important to keep in mind the following principles in this case:

Statutory language should be construed reasonably, keeping in mind the purpose of the act. The purpose of judicial statutory construction is to ascertain and give effect to the intent of the Legislature. In determining the Legislature's intent, we must first look to the language of the statute itself. Moreover, when considering the correct interpretation, the statute must be read as a whole. A statute must be read in conjunction with other relevant statutes to ensure that the legislative intent is correctly ascertained. The statute must be interpreted in a manner that ensures that it works in harmony with the entire statutory scheme. The Legislature is presumed to be familiar with the rules of statutory construction and, when promulgating new laws, to be aware of the consequences of its use or omission of statutory language, and to have considered the effect of new laws on all existing laws. [*In re MKK*, 286 Mich App 546, 556-557; 781 NW2d 132 (2009) (quotation marks and citations omitted).]

### III. CONSIDERATION OF THE FACTORS UNDER MCL 722.31(4)

Plaintiff first argues that the trial court erred by failing to consider four out of the five factors listed under MCL 722.31(4) when it decided plaintiff's motion for a change of domicile. We disagree.[4]

Section 11 of the Child Custody Act ("CCA"), MCL 722.21 *et seq.*, provides, in relevant part:

A child whose parental custody is governed by court order has, for the purposes of this section, a legal residence with each parent. Except as otherwise provided

---

[4] Defendant contends that plaintiff waived this issue. We reject defendant's characterization of the record. It is clear that plaintiff did not "affirmatively express[] satisfaction" with the court's proposed analysis under MCL 722.31(4). *Moore v Detroit Entertainment, LLC*, 279 Mich App 195, 224; 755 NW2d 686 (2008). Additionally, plaintiff was not required to object to the trial court's findings in its written opinion and order to preserve this issue for appeal. See MCR 2.517(A)(7).

in this section, a parent of a child whose custody is governed by court order shall not change a legal residence of the child to a location that is more than 100 miles from the child's legal residence at the time of the commencement of the action in which the order is issued. MCL 722.31(1).

However, a court may permit a change of domicile as provided in MCL 722.31(4), which states:

> (4) Before permitting a legal residence change otherwise restricted by subsection (1), the court shall consider each of the following factors, with the child as the primary focus in the court's deliberations:
>
> (a) Whether the legal residence change has the capacity to improve the quality of life for both the child and the relocating parent.
>
> (b) The degree to which each parent has complied with, and utilized his or her time under, a court order governing parenting time with the child, and whether the parent's plan to change the child's legal residence is inspired by that parent's desire to defeat or frustrate the parenting time schedule.
>
> (c) The degree to which the court is satisfied that, if the court permits the legal residence change, it is possible to order a modification of the parenting time schedule and other arrangements governing the child's schedule in a manner that can provide an adequate basis for preserving and fostering the parental relationship between the child and each parent; and whether each parent is likely to comply with the modification.
>
> (d) The extent to which the parent opposing the legal residence change is motivated by a desire to secure a financial advantage with respect to a support obligation.
>
> (e) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

In *Rains*, 301 Mich App at 325, we "reiterate[ed] the correct process that a trial court must use when deciding a motion for change of domicile":

> A motion for a change of domicile essentially requires a four-step approach. First, a trial court must determine whether the moving party has established by a preponderance of the evidence that the factors enumerated in MCL 722.31(4), the so-called *D'Onofrio*[3] factors, support a motion for a change of domicile. Second, if the factors support a change in domicile, then the trial court must then determine whether an established custodial environment exists. Third, if an established custodial environment exists, the trial court must then determine whether the change of domicile would modify or alter that established custodial environment. Finally, if, and only if, the trial court finds that a change of domicile would modify or alter the child's established custodial environment must the trial court determine whether the change in domicile would be in the

child's best interests by considering whether the best-interest factors in MCL 722.23 have been established by clear and convincing evidence.

---

[3] *D'Onofrio v D'Onofrio*, 144 NJ Super 200, 206-207; 365 A2d 27 (1976).

---

See also *McKimmy v Melling*, 291 Mich App 577, 582; 805 NW2d 615 (2011) ("The party requesting the change of domicile has the burden of establishing by a preponderance of the evidence that the change is warranted.").

As plaintiff emphasizes, the trial court did not specifically identify any subsections of MCL 722.31(4) in its reasoning for denying plaintiff's motion. It stated that "MCL 722.31(4) controls the question of a legal residence change" and quoted portions of the language in MCL 722.31(4)(a) without referencing the language of any other subsection, either by direct quotation or paraphrase, and without providing any other reasoning that could be construed as an analysis of the other factors. However, at the end of the hearing on plaintiff's motion, the trial court stated that the only two factors that it needed to analyze in this case were those under MCL 722.31(4)(a) and (c). By recognizing that MCL 722.31(4) governs this case and indicating its focus on particular factors, it is clear that the court considered the relevancy of all the factors before narrowing the focus of its analysis. Therefore, the trial court should not be understood as indicating that it ignored some of the factors under MCL 722.31(4).

Moreover, considering the trial court's reasoning as a whole, and its statements on the record at the end of the motion hearing, it is apparent that the trial court found the factor under MCL 722.31(4)(a) dispositive in this case. As a result, we conclude that the trial court completed the first step under *Rains* by (1) determining that plaintiff had not demonstrated, by a preponderance of the evidence, that "the legal residence change has the capacity to improve the quality of life for both the child and the relocating parent" under MCL 722.31(4)(a), and (2) then concluding that this factor was outcome determinative, such that further explanation of its findings under the other factors was unnecessary. See *Rains*, 301 Mich App at 325. Cf. *Brown v Loveman*, 260 Mich App 576, 601; 680 NW2d 432 (2004) (indicating that the moving party carries a burden of satisfying each factor under MCL 722.31(4)). Stated differently, it was logical for the trial court to conclude, based on its finding that it was not clear that the child's quality of life would be improved by the move, that plaintiff had failed to demonstrate by a preponderance of the evidence that the factors under MCL 722.31(4) supported a change of domicile, especially because the child was required to be the court's primary concern in this inquiry. See MCL 722.31(4); *Rains*, 301 Mich App at 325.

We disagree with plaintiff's contention that the trial court was, at a minimum, required to state its findings with regard to each of the factors under MCL 722.31(4). MCL 722.31(4) provides that before a court permits a legal residence change restricted by MCL 722.31(1), "the court *shall consider* each of the following factors . . . ." (Emphasis added.) "The word 'shall' is unambiguous and is used to denote mandatory, rather than discretionary, action." *Salter v Patton*, 261 Mich App 559, 564; 682 NW2d 537 (2004) (quotation marks and citation omitted). Accordingly, when a statute states that a court "shall consider" specific factors or criteria in

rendering its decision, consideration of each of those factors is mandatory. See, e.g., *Gilmore v Parole Bd*, 247 Mich App 205, 233; 635 NW2d 345 (2001).

We conclude that the statutory language requiring a court to "consider" the factors under MCL 722.31(4) does not require the court to specifically delineate its findings with regard to each factor, especially when MCL 722.31(4) is read in the context of the entire CCA. See *In re MKK*, 286 Mich App at 556-557; *Lee*, 310 Mich App at 509. "Consider" is not defined by the act. Accordingly, we may turn to the dictionary in order to determine its plain and ordinary meaning. *Hays v Lutheran Soc Services of Michigan*, 300 Mich App 54, 59; 832 NW2d 433 (2013). In *Merriam-Webster's Collegiate Dictionary* (11th ed), "consider" is defined as "to think about carefully," "to think of esp. with regard to taking some action," "to take into account," "to regard or treat in an attentive or kindly way," and "to come to judge or classify." Based on this definition, it is apparent that MCL 722.31(4) requires a trial court to carefully think about, take into account, or assess each factor, but there is no indication that a trial court is required to take further action, such as making explicit findings on the record.

This conclusion is supported by use of the word "consider" elsewhere in the CCA, where it is paired with other verbs clearly requiring a trial court to specifically make findings and state its conclusions with regard to each of the applicable factors or criteria. Again, MCL 722.31(4) provides, "Before permitting a legal residence change otherwise restricted by subsection (1), the court *shall consider each of the following factors . . . .*" (Emphasis added.) MCL 722.23, on the other hand, states, "As used in this act, 'best interests of the child' means the sum total of the following factors *to be considered, evaluated, and determined by the court . . . .*" (Emphasis added.) "Evaluate" and "determine" are not defined by the CCA. The dictionary definition of "evaluate" is "to determine or fix the value of," and "to determine the significance, worth, or condition of usu. by careful appraisal and study." *Merriam-Webster's Collegiate Dictionary* (11th ed). "Determine" is defined, in relevant part, as "to settle or decide by choice of alternatives or possibilities," "to find out or come to a decision about by investigation, reasoning, or calculation," or "to come to a decision." In considering the differences between the statutory language, it is apparent that MCL 722.23 requires more than MCL 722.31(4).

Accordingly, we reject plaintiff's reliance on unpublished authority citing *Bowers v Bowers*, 198 Mich App 320, 328; 497 NW2d 602 (1993), to conclude that a trial court is required to explicitly state its findings and conclusions with regard to each factor under MCL 722.31(4). *Bowers*, 198 Mich App at 328, restated the rule that a "trial court must consider each of the[] factors [under MCL 722.23] and explicitly state its findings and conclusions regarding each." Given the significant differences between the statutory language in MCL 722.31(4) and MCL 722.23, we conclude that MCL 722.31(4) does not encompass the requirement under *Bowers* that the court must state its findings and conclusions with regard to each factor.

Furthermore, MCL 722.31 was added to the CCA after MCL 722.23 was enacted and after *Bowers*, 198 Mich App at 328, and other cases restating the same rule were decided. See, e.g., *Daniels v Daniels*, 165 Mich App 726, 730-731; 418 NW2d 924 (1988). We must read statutes in context with other relevant statutes, *In re MKK*, 286 Mich App at 556, and we must presume that "the Legislature was aware of judicial interpretations of the existing law when passing legislation," *Lee*, 310 Mich App at 509. We also must presume that the Legislature was "familiar with the rules of statutory construction and, when promulgating new laws, . . . aware of

the consequences of its use or omission of statutory language, and to have considered the effect of new laws on all existing laws." *In re MKK*, 286 Mich App at 556-557. Thus, without any indication to the contrary, we must conclude that the Legislature intentionally chose to exclude "evaluate" and "determine" from the language in MCL 722.31, thereby mandating a different procedure than that required by MCL 722.23. In other words, we conclude that the Legislature's intent was not to require the same procedures to be utilized by trial courts in considering the factors under MCL 722.31(4) and MCL 722.23.

However, it is necessary to note that MCR 3.210(D) describes the trial court's responsibility to make findings of fact with regard to contested postjudgment motions in domestic relations actions, such as the motion at issue in this case. It states, in relevant part:

> (D) The court must make findings of fact as provided in MCR 2.517, except that
>
> (1) *findings of fact and conclusions of law are required on contested postjudgment motions to modify a final judgment or order . . . .* [MCR 3.210(D)(1) (emphasis added).]

Although we conclude that MCL 722.31(4) does not require a trial court to specifically state its factual findings and conclusions with regard to each factor, the trial court must state its factual findings and conclusions of law in a manner that fulfills MCR 3.210(D)(1) and facilitates appellate review, given that we must be able to review the court's findings concerning the factors under MCL 722.31(4) to determine whether those findings were against the great weight of the evidence. *Rains*, 301 Mich App at 324.

Because MCL 722.31(4) only requires that a court "consider" each listed factor, the trial court in this case did not commit clear legal error when it failed to expressly address in its opinion all of the factors under MCL 722.31(4) in considering plaintiff's motion to change the child's legal residence. See MCL 722.28; *Fletcher*, 447 Mich at 876-877; *Sulaica*, 308 Mich App at 577. The record shows that the trial court recognized that all of the factors under MCL 722.31(4) are applicable to a motion for a change in domicile, but it subsequently concluded, evidently based on the evidence presented at the motion hearing, that only two factors (those under MCL 722.31(4)(a) and (c)) were relevant or contested in this case, and that MCL 722.31(4)(a) was dispositive.[5] Given the trial court's findings under the facts of this case, the trial court applied the proper legal framework and did not commit clear legal error. See *Rains*, 301 Mich App at 325-326, 329-330.

## IV. GREAT WEIGHT OF THE EVIDENCE

---

[5] Notably, plaintiff concedes on appeal that the factors under MCL 722.31(4)(d) and (e) were irrelevant in this case.

-8-

Next, plaintiff contends that the trial court's finding under MCL 722.31(4)(a) that changing the child's domicile to Pennsylvania did not have the capacity to improve the child's quality of life was against the great weight of the evidence. We disagree.

In the trial court, it was undisputed that the move had the capacity of improving *plaintiff's* quality of life both financially and emotionally. Likewise, the trial court expressly recognized that the move will greatly benefit plaintiff financially, and the record supports such a conclusion. It is apparent that the move would significantly increase plaintiff's income and allow plaintiff and her husband to consolidate their living expenses instead of paying for separate households. However, plaintiff contends that the trial court "failed to acknowledge" that the "increase in [plaintiff's] earning potential" resulting from the move "would also serve to improve [GY's] life as well." We have recognized that an increase in a parent's income can improve a child's quality of life. See *Rittershaus v Rittershaus*, 273 Mich App 462, 466; 730 NW2d 262 (2007); *Brown*, 260 Mich App at 601. Plaintiff testified that the additional money earned, and saved, as a result of the move will make it possible to afford the tuition for Notre Dame High School and take more trips as a family.[6]

Extensive testimony was provided regarding the potential ways in which [GY] may benefit by attending Notre Dame High School. This Court has recognized that the benefits of the school or school district where the moving party plans to relocate is a relevant consideration under MCL 722.31(4). See, e.g., *Rittershaus*, 273 Mich App at 467; *Dick v Dick*, 147 Mich App 513, 520; 383 NW2d 240 (1985). Accordingly, plaintiff contests the trial court's "determination that there was no 'strong' evidence that the proposed new school was superior to [GY's] current school is also against the great weight of evidence." In her brief on appeal, plaintiff reiterates, in detail, the testimony provided at the hearing regarding Notre Dame's "impressive credentials." However, plaintiff fails to recognize that she did not proffer any evidence regarding the credentials of GY's current school, which would have provided a basis for the trial court to determine whether the change in schools had the capacity to actually *improve* the child's "quality of life." MCL 722.31(4). Although plaintiff and defendant testified regarding GY's struggles in his current school, there is nothing in the record developed at the motion hearing, including the trial court's receipt of report cards after the hearing, that would facilitate an adequate comparison or demonstrate that Notre Dame High School actually offered substantial "additional programs," services, or extracurricular activities that are unavailable in GY's current school system. See *Rittershaus*, 273 Mich App at 467. Demonstrating the capacity for an *improvement* in the child's quality of life was plaintiff's burden. See *Rains*, 301 Mich App at 326-327.

We recognize that plaintiff stated relevant statistics for Alpena Public Schools, without citation or supporting documentation, in her motion for reconsideration, but a motion for reconsideration is a vehicle to identify "a palpable error" in the *prior ruling*. See MCR 2.119(F)(3). Accordingly, a court has full discretion to decline to consider evidence presented with a motion for reconsideration "that could have been presented the first time the issue was

---

[6] Plaintiff testified that she and Wallen have not been able to accumulate savings due to the fact that their limited surplus income is routinely consumed by unexpected expenses.

argued." *Churchman v Rickerson*, 240 Mich App 223, 233; 611 NW2d 333 (2000); see also *Yoost v Caspari*, 295 Mich App 209, 220; 813 NW2d 783 (2012) ("Ordinarily, a trial court has discretion on a motion for reconsideration to decline to consider new legal theories or evidence that could have been presented when the motion was initially decided."). Alpena Public Schools' academic reputation may be well known to those who reside in that area, but without admitted evidence on the matter, we cannot conclude that the trial court's finding was against the great weight of the evidence in the record. See *Rains*, 301 Mich App at 324-325.

Plaintiff also identified Notre Dame's successful soccer and robotics teams in support of her position that Notre Dame offers additional extracurricular activities that are not available in Alpena. However, she expressly acknowledged during her testimony at the motion hearing that the child plays soccer in the Alpena area, albeit through an association separate from his school, and that the area has a robotics club. Plaintiff also indicated that the child was interested in a course in Mandarin Chinese at Notre Dame, which would not be available to him in Alpena, and that Notre Dame's "small class sizes" were a benefit that was not available at the child's current school. However, the availability of a course in Mandarin, smaller class sizes, and a *school* soccer team does not demonstrate that the trial court's finding that "[t]he proof concerning the superiority of the proposed school is not strong" clearly preponderates against the great weight of the evidence. See *id*. Such a conclusion is further supported by the fact that plaintiff acknowledged that she and Wallen had not resolved—or even fully considered—how the child would be transported to and from school each day and participate in the school's extracurricular activities given that the drive would be a minimum of 30 to 35 minutes each way, plaintiff and Wallen both planned to work full-time jobs, and there is no school bus transportation to and from the area where they intended to move.

Moreover, increased financial resources and the related opportunity to enroll in a private school are two of several considerations relevant to a trial court's determination of whether a change in domicile has the capacity to improve a child's *overall* quality of life under MCL 722.31(4)(a). As discussed earlier in this opinion, the basis of the trial court's decision under MCL 722.31(4) was as follows: (1) "removing the child from this community where he has a large extended family into a community where he has no extended family is very much against his best interest"; (2) moving the child from a school system that he has attended for his entire life into a community where he knows no one except plaintiff and her husband is against the child's best interest; and (3) "[t]he proof concerning the superiority of the proposed school is not strong and fails to establish by a preponderance of evidence that the residence change has the capacity to improve the quality of life for the minor child." It is clear from the trial court's reasoning that it believed that these circumstances—which demonstrated that a long-distance move would be disruptive to the child's strong ties to the area—outweighed the extent to which the child may benefit from a moderate increase in the family's disposable income or from enrollment in the private school selected by plaintiff.

Furthermore, we have recognized that living in close proximity to immediate and extended family members and remaining in a stable environment are relevant considerations with regard to MCL 722.31(4)(a). See, e.g., *Rittershaus*, 273 Mich App at 466-467 (recognizing the importance of having relatives in close proximity in a case where child care was needed); *Dick*, 147 Mich App at 520-521 (recognizing the importance of having a day-to-day relationship with a parent). Contrary to plaintiff's claims on appeal, the testimony at the motion hearing clearly

shows that the child had a significant network of extended family members, including both his biological relatives and the relatives of plaintiff's and defendant's significant others, who knew him well and frequently spent time with him. Although plaintiff argues that the trial court failed to consider the fact that moving to Pennsylvania will allow GY to spend more time with Wallen, moving out-of-state also would, on the same token, prevent GY from spending as much time with LeTourneau, who has played a substantial, parent-like role in his life for many years as defendant's live-in girlfriend and fiancée.[7]

Plaintiff also contends that the trial court failed to consider testimony regarding defendant's limited knowledge of the child's activities and lack of diligence in caring for the child's emotional and medical needs, which, according to plaintiff, weighs in favor of a finding that the move had the capacity to improve the child's quality of life. We have reviewed each of these claims and conclude that most of the inferences drawn by plaintiff are not supported by the cited testimony. Further, these specific pieces of testimony do not establish that the trial court's findings under MCL 722.31(4)(a) were against the great weight of the evidence.

Plaintiff argues that the trial court should have considered testimony from plaintiff and Notre Dame's admissions director that GY seemed excited about attending Notre Dame. We cannot conclude that reversal is required on this basis. Although the Legislature directs courts to address "[t]he reasonable preference of the child, if the court considers the child to be of sufficient age to express preference," when determining the best interests of the child, MCL 722.23(i), the child's preference is not a specific consideration for determining whether the moving party has supported the proposed change of domicile by a preponderance of the evidence under MCL 722.31(4), see *Rains*, 301 Mich App at 325. There is no indication in MCL 722.31 that the factors listed in subsection (4) are exclusive, meaning that the court could have expressly considered the child's stated interest in Notre Dame High School, but we decline to reverse the trial court's judgment based on a factor that the court was not required to consider.

Our task on appeal is to consider plaintiff's claims while bearing in mind that "a reviewing court should not substitute its judgment on questions of fact unless they clearly preponderate in the opposite direction." *Fletcher*, 447 Mich at 878 (quotation marks and citation omitted). While the record shows that moving to Pennsylvania had the capacity to increase plaintiff's quality of life both financially and emotionally, and had the potential of benefitting the child by providing additional funds for private school tuition and family trips, the trial court's ultimate determination that the move did not have the capacity to increase the child's quality of life overall was not against the great weight of the evidence. See *Rains*, 301 Mich App at 324-325.

## V. ESTABLISHED CUSTODIAL ENVIRONMENT

---

[7] We have stated that "the role of the extended family cannot be the determining factor in denying a change of domicile." *Phillips v Jordan*, 241 Mich App 17, 31; 614 NW2d 183 (2000). However, in this case, it is clear that the trial court also relied on other considerations and did not solely rely on the proximity of extended family as the determining factor.

Plaintiff next contends that the trial court erred by ordering a new parenting time arrangement upon plaintiff's move to Pennsylvania without first considering whether plaintiff's move to Pennsylvania would alter an established custodial environment and, if so, whether the parenting time arrangement was in the child's best interests. It is undisputed that plaintiff now lives in Pennsylvania, such that the new parenting time arrangement is in effect under the order. We agree with plaintiff and conclude that this case must be remanded for the trial court to consider the statutory best interest factors under MCL 722.23 with respect to the parenting time schedule now in place.

MCL 722.27(1)(c) allows a trial court to "modify or amend its previous judgments or orders for proper cause shown or because of change of circumstances," as long as the modification would be in the child's best interests. "The statutory requirement for a threshold finding of proper cause or a change of circumstances does not necessarily control a case involving modification of parenting time 'absent a conclusion that a change in parenting time will result in a change in an established custodial environment.' " *Kubicki v Sharpe*, 306 Mich App 525, 540 n 8; 858 NW2d 57 (2014), quoting *Shade v Wright*, 291 Mich App 17, 25-27; 805 NW2d 1 (2010). An established custodial environment exists "if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort." MCL 722.27(1)(c).

Here, the trial court found that an established custodial environment existed with both parents, which neither party disputes on appeal. Following the hearing on plaintiff's motion to change the child's domicile, the trial court held that the inverse of plaintiff's proposed parenting time schedule would be in effect in the event that plaintiff moved to Pennsylvania. This schedule significantly reduced plaintiff's parenting time from caring for the child on an alternating weekly basis to caring for the child only during his summer vacation and other extended breaks from school. It is apparent that this amended parenting time schedule would result in a change in the established custodial environment. See *Brown*, 260 Mich App at 592 (concluding, in a case where the parents previously exercised equal parenting time, that a parenting time modification strikingly similar to that ordered by the court in the instant case "effectively amounted to a change in the established custodial environment").

Pursuant to MCL 722.27(1)(c), "[t]he court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child." The mandate under MCL 722.27(1)(c) "requires the court to consider the factors listed in MCL 722.23 and to state its findings and conclusions with respect to each one." *Spires v Bergman*, 276 Mich App 432, 444 n 4; 741 NW2d 523 (2007).

We agree with plaintiff that this case is similar to *Grew v Knox*, 265 Mich App 333; 694 NW2d 772 (2005). In that case, the plaintiff filed a motion change her domicile and change the child's legal residence from Monroe County, Michigan, to Traverse City, Michigan. *Id*. at 334-335. In response, the defendant filed a motion requesting temporary custody of the parties' child. *Id*. at 335. Before holding evidentiary hearings on the parties' motions, the court concluded that a hearing on defendant's motion for a change in custody would not be necessary if the court determined that the plaintiff had failed to meet her burden of proof under MCL 722.31 to change the child's legal residence. *Id*. at 335. Later, the trial court denied the

plaintiff's motion to change the child's residence, finding that plaintiff had failed to meet her burden under MCL 722.31. *Id*. at 336. As a result, "the trial court did not hold a hearing on defendant's motion for a change of custody. However, despite the lack of a custody hearing, the trial court granted temporary physical custody to defendant for as long as plaintiff continued to live in" Traverse City. *Id*. at 336. We concluded "that the trial court erred in awarding temporary physical custody of the child to defendant without conducting an evidentiary hearing or making findings of fact pursuant to MCL 722.23 and 722.27," reasoning as follows:

> In the present case, the trial court altered the parties' custody arrangements after conducting an evidentiary hearing on plaintiff's motion for a change of legal residence. Although a hearing under MCL 722.31 does take into consideration *the child's interests*, see MCL 722.31(4), *the child's best interests* as delineated by MCL 722.23 are not the primary focus of the hearing. Likewise, had the court held a hearing regarding defendant's motion for a change of custody, the burden would have been on defendant to prove by clear and convincing evidence that the change was in the child's best interests, MCL 722.27(1)(c), rather than on plaintiff, as was the case in the hearing under plaintiff's motion for a change of legal residence. Yet once the trial court determined that plaintiff had not met her burden under MCL 722.31, the trial court ended the hearing and awarded temporary custody to defendant without hearing testimony regarding whether a change in custody was in the child's best interests or making findings regarding the child's best interests. . . . Whether a court is establishing custody in an original matter, or altering a prior custody order, the requirement is the same: "specific findings of fact regarding each of twelve factors that are to be taken into account in determining the best interests of the child" must be made. [*Grew*, 265 Mich App at 336-337 (emphasis added).]

Importantly, the *Grew* Court stated that the trial court's "determination that a change of the child's legal residence was not warranted, coupled with plaintiff's intention to remain in Traverse City, necessitated a review of the current custody situation," meaning that "the trial court should have analyzed the best interest factors under MCL 722.23 and 722.27 before making any changes to custody." *Grew*, 265 Mich App at 337-338. Accordingly, the Court "remand[ed] the case to the trial court for an evidentiary hearing on the change of custody." *Id*. at 342.

Although *Grew* is distinguishable to a certain extent because defendant did not bring a separate motion for temporary custody in this case, we believe that the analysis in *Grew* can be understood as generally holding that a trial court is required to analyze the best interest factors before entering a custody order that alters an established custodial environment, even in cases when that change in custody is prompted by a situation where a parent, whose motion for a change in domicile was denied, still decides to move, or remain, a significant distance away. Further, even if we assume, arguendo, that *Grew* is not generally applicable in these situations, defendant's actions in this case were similar to the defendant's actions in *Grew*. Defendant did not file a separate motion requesting a change in custody in this case, but he asked for such a change in his response to plaintiff's motion by requesting modification of the parenting time schedule and the current custody arrangement so that he would be awarded "primary physical custody" if plaintiff moved to Pennsylvania. Correspondingly, the trial court implicitly

-13-

recognized that its alteration of the parenting time arrangement, upon plaintiff's move to Pennsylvania, constituted a change in custody, as it stated:

> In the event that the Plaintiff moves from the area to the state of Pennsylvania she is to enjoy the same parenting time schedule for herself that she proposed for Mr. Yachcik at the hearing in this cause. If she does not leave this area, the Order of week on week off *will control custody* and parenting time. [Emphasis added.]

A trial court is required to address the best interest factors under MCL 722.23 whenever a parenting time modification results in a change of custody. *Shade*, 291 Mich App at 32; *Powery v Wells*, 278 Mich App 526, 528; 752 NW2d 47 (2008). Thus, the circumstances of the instant case did not excuse the trial court from addressing whether the particular modification of the parenting time schedule was in the child's best interests by expressly considering and making findings regarding each factor set forth under MCL 722.23. MCL 722.27(1)(c); *Shade*, 291 Mich App at 32; *Spires*, 276 Mich App at 444 n 4.

We note that the parties dispute whether the trial court was required to consider the child's best interests in this case in light of the parties' specific statements and arguments in the court below. We reject defendant's focus on the parties' failure to prompt the trial court to consider the best interest factors before changing the parenting time arrangement in this case given the clear statutory mandate under the CCA.

> The Child Custody Act is a comprehensive statutory scheme for resolving custody disputes. With it, the Legislature sought to "promote the best interests and welfare of children." The act applies to all custody disputes and vests the circuit court with continuing jurisdiction.
>
> The act makes clear that the best interests of the child control the resolution of a custody dispute between parents, as gauged by the factors set forth at MCL 722.23. MCL 722.25(1). It places an affirmative obligation on the circuit court to "declare the child's inherent rights and establish the rights and duties as to the child's custody, support, and parenting time in accordance with this act" whenever the court is required to adjudicate an action "involving dispute of a minor child's custody." MCL 722.24(1); *Van* [*v Zahorik*, 460 Mich 320, 328; 597 NW2d 15 (1999).] Taken together, these statutory provisions impose on the trial court the duty to ensure that the resolution of any custody dispute is in the best interests of the child. [*Harvey v Harvey*, 470 Mich 186, 191-192; 680 NW2d 835 (2004) (citations omitted).]

An affirmative duty imposed by the Legislature on a trial court cannot be sidestepped merely because a party does not remind the court of its responsibility. See *Powery*, 278 Mich App at 528-529; *Grew*, 265 Mich App at 336-338, 342.

"Where a trial court fails to consider custody issues in accordance with the mandates set forth in MCL 722.23 and make reviewable findings of fact, the proper remedy is to remand for a new child custody hearing." *Foskett v Foskett*, 247 Mich App 1, 12; 634 NW2d 363 (2001) (quotation marks and citation omitted). Thus, remand is required so that the trial court may

consider the statutory best interest factors and determine whether the new parenting time arrangement is in the best interests of the child.[8]

## VI. CONCLUSION

Plaintiff has failed to establish that the trial court erred in denying her motion to change the child's domicile from Michigan to Pennsylvania. However, we agree that the trial court erred by adopting a parenting time arrangement that changed the established custodial environment without first considering whether that particular arrangement was in the best interests of the child.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Joel P. Hoekstra
/s/ Henry William Saad
/s/ Michael J. Riordan

---

[8] Because there is no indication that the trial court considered the statutory best interest factors at all in ordering the new parenting time schedule, we do not believe that a best interest "finding can easily and clearly be drawn" from the court's opinion. See *Powery*, 278 Mich App at 530-531. Notably, the trial court expressly held that it would not hear any testimony relevant to the best interest factors under MCL 722.23 at the hearing on plaintiff's motion for a change of domicile. Additionally, although we recognize that the number of viable parenting time arrangements is rather limited in this case given the child's school schedule and the location of plaintiff's and defendant's residences, there are not only two feasible alternatives for parenting time in this case. The trial court should have considered the child's best interests in crafting a new schedule.