Markman, J. (concurring).
I concur in the majority's decision to reverse the judgment of the Court of Appeals, which held that petitioners' appeal in this adoption case is moot because of an order of filiation in a related paternity case, Brown v. Ross (Docket No. 157997), vacate the trial court's determination that the putative father was a "do something" father under MCL 710.39(2), and remand to the trial court to conduct an analysis under MCL 710.39(1). That is, I agree with the majority that the trial court in the paternity case abused its discretion by denying the birth mother's motions to stay the paternity case for the adoption case and that, as a result, the order of filiation was erroneously entered before the adoption case was completed. Accordingly, the majority correctly vacates the trial court's order of filiation in the paternity case and holds that petitioners' appeal in this adoption case is not moot. I also agree with the majority that the trial court abused its discretion in determining that the putative father was a "do something" father under MCL 710.39(2), for the reasons explained by the majority.
However, I write separately because I disagree with the majority's statement that " '[a]lthough proceedings under the Adoption Code should, in general, take precedence over proceedings under the Paternity Act, adoption proceedings may be stayed upon a showing of good cause, as determined by the trial court on a case-by-case basis.' In re MKK , 286 Mich. App. 546, 555 [781 N.W.2d 132] (2009), citing MCL 710.25(2)." Because I believe, for the reasons explained below, that proceedings under the Adoption Code must take priority over proceedings filed under the Paternity Act and there is no "good cause" exception to that requirement, I believe that In re MKK was wrongly decided and thus would not rely on it as the majority does. That is, I would not, as does the majority, focus on whether respondent-father requested the trial court to stay the adoption case for the paternity case and *188 whether the facts warranted such a stay. Instead, I would simply hold, in accordance with the Legislature, that an adoption case must take priority over a paternity case and thus that the trial court abused its discretion by not staying the paternity case for the adoption case. The majority states, "We agree with Justice Viviano that ' In re MKK represents an admirable effort by the Court of Appeals to balance the competing rights, interests, and responsibilities of the parties when determining whether to proceed with proceedings under the Adoption Code or a case filed under the Paternity Act.' " However "admirable" this effort may or may not be, it would have been far more "admirable," in my judgment, had the Court of Appeals, and now this Court, simply abided by the mandate of the Legislature that adoption cases be given the "highest priority." It is not for this, or any other, Court to "balance the competing rights, interests, and responsibilities" of the parties where that has already been done by the Legislature.
MCL 710.25(1) provides, "All proceedings under [the Adoption Code] shall be considered to have the highest priority and shall be advanced on the court docket so as to provide for their earliest practicable disposition."[2] Pursuant to this provision, an adoption case should never be stayed for a paternity case because an adoption case must be given the "highest priority." MCL 710.25(2) states that "[a]n adjournment or continuance of a proceeding under [the Adoption Code] shall not be granted without a showing of good cause." I believe that In re MKK , and now this Court, erroneously interpret this provision to signify that, upon a showing of "good cause," an adoption case can be stayed for a paternity case. Instead, I believe the more reasonable interpretation of these provisions is that while an adoption case can, upon a showing of good cause, be adjourned or postponed, an adoption case must nonetheless take priority over a paternity case. In other words, MCL 710.25(2) is not an exception to the requirement in MCL 710.25(1) that an adoption case must be given the "highest priority." There is no instance in which another case should be accorded higher priority than an adoption case, and In re MKK read language into MCL 710.25(2) that is simply not there. Stating, as MCL 710.25(2) does, that an adoption case cannot be adjourned without a showing of good cause is not the equivalent of stating, as In re MKK does, that upon a showing of good cause, a paternity case may be given higher priority than an adoption case. MCL 710.25(1) provides that an adoption case shall be given the "highest priority," and there are no exceptions to that requirement. While MCL 710.25(2) does allow an adoption case to be adjourned, upon a showing of good cause, it does not allow another case to take priority over that case. Rather, read in context, I believe MCL 710.25(2) allows an adoption case to be adjourned where, for example, a witness, party, or attorney is unavailable, but it still does not allow a paternity action to be accorded priority. Holding to the contrary allows the express direction of MCL 710.25(1) to be rendered null and void by MCL 710.25(2), despite that: (a) there is no "good cause" exception contained in MCL 710.25(1), (b) there is no exception of any sort in MCL 710.25(1) to the express dictate set forth in that provision, (c) there is no reference within either provision to the disputed aspect of the other provision, and (d) stating, as MCL 710.25(2) does, that an adjournment of an adoption case shall not be granted without a showing of "good cause" would be a *189 remarkably oblique way of overcoming the explicit dictate of MCL 710.25(1) to consider adoption cases to have the "highest priority."[3]
Furthermore, I believe that this interpretation of § 25 of the Adoption Code is more generally consistent with the Adoption Code as a whole. As discussed, the Legislature clearly expressed its intention in the Adoption Code that adoption cases, not paternity cases, proceed first, and it created no exception to this rule, in particular for paternity cases. MCL 710.25(1). Instead, the Adoption Code provides detailed procedures for addressing the rights of putative fathers contesting an adoption. To begin with, the Adoption Code provides that the court shall determine the identity of the father by way of an affidavit from the mother, not by performing a DNA test as is done under the Paternity Act. MCL 710.36(6).[4] Next, under the Adoption Code, the rights of putative fathers are determined not by performing a DNA test as they are under the Paternity Act, but, instead, by the nature of the relationship between the putative father and the child and the level of care and support provided by the putative father to the mother and child. See MCL 710.39.[5] That is, the Adoption *190 Code sets forth differing standards for terminating a putative father's parental rights depending on the nature of the relationship between the putative father and the child and the level of care and support provided by the putative father to the mother and child. Id. The Adoption Code also provides a means both of terminating the putative father's rights if he fails to satisfy the applicable standards and transforming him into a legal father with custody rights if he succeeds in meeting these standards. Id. Had the Legislature intended that the Paternity Act be used to thwart or subordinate adoption proceedings, it would not have created these detailed procedures. It would have simply called for the putative father to take a DNA test and determine his rights exclusively on the basis of those results as is done under the Paternity Act.[6]
If an adoption case can, in fact, be stayed for a paternity case, all these provisions within the Adoption Code will be undermined. An adoption case will not be given the "highest priority" contrary to MCL 710.25(1). The identity of the father will be determined by a DNA test rather than by an affidavit from the mother contrary to MCL 710.36(6). The rights of putative fathers will also be determined by a DNA test rather than by the nature of the relationship between the putative father and the child and the level of care and support provided by the putative father to the mother and child, all contrary to MCL 710.39. Finally, adoption cases involving putative fathers will not be decided on a consistent basis because some will be resolved under the Adoption Code and others will be resolved under the Paternity Act, depending on whether the trial court finds "good cause" to stay the adoption case for the paternity case.
My interpretation is also more consistent with the fundamental purposes of the Adoption Code and the Paternity Act. While the purposes of the Adoption Code include "[t]o provide procedures and services that will safeguard and promote the best interests of each adoptee in need of adoption and [to] protect the rights of all parties concerned," MCL 710.21a(b), a purpose of the Paternity Act is "to confer upon circuit courts jurisdiction over proceedings to compel and provide support of children born out of wedlock," 1956 PA 205, title. That is, given that the purpose of the Adoption Code is to protect the rights of all those involved in an adoption case, while the purpose of the Paternity Act is to compel fathers of children born out of wedlock to pay child support, it makes considerable sense that a putative father's rights in an adoption case would be determined pursuant to the Adoption Code rather than the Paternity Act.
Because I do not believe In re MKK communicates what the Legislature intended, as best evidenced by the plain and straightforward language of the Adoption Code that adoption cases be given the "highest priority," I would overrule In re MKK and hold that adoption cases are to be given the "highest priority" and that there is no "good cause" exception to this requirement, in which the discretion of the judge replaces the judgment of the Legislature.
Zahra, J., joins the statement of Markman, J.

In addition, MCL 710.21a(b) provides that "[i]f conflicts arise between the rights of the adoptee and the rights of another, the rights of the adoptee shall be paramount."

While I agree with the dissent that "[t]here are some reasons to question whether the Court of Appeals' analysis in In re MKK is firmly rooted in the plain language of the statutes it relies upon," and while perhaps "those statutes do not explicitly address whether an adoption proceeding should be stayed in favor of a competing paternity action," I believe the requirement that an adoption case be accorded the "highest priority" rather clearly expresses the Legislature's intention to not have adoption cases stayed for paternity cases, but to instead have paternity cases stayed for adoption cases, to avoid the very situation that resulted in this case in which the lower courts allowed a paternity case to take priority over an adoption case: namely, that the adoption case was rendered moot because of the order of filiation in the paternity case.

MCL 710.36(6) provides:
The court shall receive evidence as to the identity of the father of the child. In lieu of the mother's live testimony, the court shall receive an affidavit or a verified written declaration from the mother as evidence of the identity and whereabouts of the child's father. If the court determines that the affidavit or verified written declaration is insufficient, the court shall allow amendment of the affidavit or verified written declaration. If the court determines that the amendment of the affidavit or verified written declaration is insufficient, the court may receive live testimony from the mother. Based upon the evidence received, the court shall enter a finding identifying the father or declaring that the identity of the father cannot be determined.

MCL 710.39 provides, in pertinent part:
(1) If the putative father does not come within the provisions of subsection (2), and if the putative father appears at the hearing and requests custody of the child, the court shall inquire into his fitness and his ability to properly care for the child and shall determine whether the best interests of the child will be served by granting custody to him. If the court finds that it would not be in the best interests of the child to grant custody to the putative father, the court shall terminate his rights to the child.
(2) If the putative father has established a custodial relationship with the child or has provided substantial and regular support or care in accordance with the putative father's ability to provide support or care for the mother during pregnancy or for either mother or child after the child's birth during the 90 days before notice of the hearing was served upon him, the rights of the putative father shall not be terminated except by proceedings in accordance with section 51(6) of this chapter or section 2 of chapter XIIA.
* * *
(5) If the mother's parental rights are terminated under this chapter or other law and are not restored under section 62 of this chapter and if the court awards custody of a child born out of wedlock to the putative father, the court shall enter an order granting custody to the putative father and legitimating the child for all purposes.

Moreover, the Adoption Code provides that a person who files a notice of intention to claim paternity is entitled to notice of adoption proceedings. MCL 710.33(3). It is noteworthy that this is all that it provides; it does not provide that the adoption case should be stayed for the paternity case. And nothing within the Paternity Act suggests anything to the contrary.