*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
July 22, 2025
9:30 AM

v

No. 366916
Ottawa Circuit Court
LC No. 02-026455-FC

KAREN SUE BOES,

Defendant-Appellant.

Before: BOONSTRA, P.J., and REDFORD and MARIANI, JJ.

PER CURIAM.

Defendant appeals by delayed leave granted the trial court's order denying her successive motion for relief from judgment under MCR 6.502(G). We vacate that order and remand for an evidentiary hearing.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In 2003, defendant was convicted, after a jury trial, of first-degree felony murder, MCL 750.316(1). Defendant appealed by right to this Court, and we affirmed her conviction and sentence. *People v Boes*, unpublished opinion per curiam of the Court of Appeals, entered December 21, 2004 (Docket No. 248289). The facts underlying defendant's conviction and sentence were summarized in this Court's opinion on direct appeal:

> Defendant's conviction arises from the death of her fourteen-year-old daughter, who died of smoke inhalation from a fire at their home. At trial, the prosecution presented evidence that the fire was fueled by an accelerant, such as gasoline; that it started in the hallway outside the victim's bedroom; and that the victim could not have started the fire and then retreated back into the bedroom where she died.

> \* \* \*

> In the instant case, the two expert witnesses presented by the prosecution agreed that the fire started in the hallway, rather than the victim's bedroom, and

-1-

that the fire was necessarily fueled by an accelerant. They explained their positions in detail and specifically testified that the fire was not accidental. Although no evidence of an accelerant was discovered in the hallway, all of the expert witnesses, including one presented by defendant, acknowledged that a fire might consume all traces of an accelerant. All of the experts searched for accidental causes of the fire, but none were found. . . .

With regard to defendant's responsibility for the fire, the evidence indicated that only defendant and the victim were in the house at the relevant time. Defendant told witnesses that the victim was sleeping when she left the house at 8:55 a.m. and that she had entered the victim's bedroom and kissed her goodbye before leaving. A passerby who noticed the fire called 911 five minutes later. Several weeks before the fire, defendant told her husband that a gas can, which was ultimately found in the victim's bedroom, was missing. Traces of gasoline were found on a chair in the master bedroom that defendant occupied by herself. Moreover, the evidence showed that gasoline was poured around the victim's bedroom and an accelerant was used in the hallway outside the room, where the fire started. One of plaintiff's experts testified that the victim could not have started the fire in the hallway and retreated back into her room.

Furthermore, during police interviews and when speaking to her husband, defendant stated that she "could have" started the fire. She told numerous different versions of the events, and several witnesses heard her declare her hatred of the victim before the fire. Defendant also admitted that she had a violent streak directed toward the victim, and that she was upset on the morning of the fire. Moreover, within a week after the victim's funeral, defendant joked that she would be in jail. [*Boes*, unpub op at 1, 4 (Docket No. 248289).]

The prosecution's two expert witnesses who testified as to the fire's origin were Special Agent Mike Marquardt and Dr. John De Haan. Both experts provided extensive testimony concerning their belief as to the fire's origin. Both experts opined that the fire had started in the hallway and spread to the victim's bedroom, where the ignition of gasoline vapors in a confined area caused a "deflagration," essentially a buildup of pressure from burning gasses, that pushed the door to the bedroom closed and caused the corner of the house's roof to briefly lift. Both experts testified that they had not found any probable sources of ignition in the hallway, nor had any traces of ignitable liquids been discovered in the hallway; further, the hallway did not appear to contain a sufficient "fuel load" in the form of burnable materials to cause a fire of the duration and intensity that resulted. Both experts testified to their conclusion that a flammable liquid had been dispersed intentionally in the hallway. Defendant presented the testimony of an expert witness, Adolf Wolf, who opined that the fire had started in the victim's bedroom.

Video recordings of defendant's interviews by law enforcement on July 30, August 7, August 13, and September 12, 2002 were played for the jury. Transcripts of those interviews with inadmissible information redacted were entered into evidence. Defendant testified and denied starting the fire; she testified that police investigators had convinced her that she could have gone insane and started the fire.

Defendant was convicted and her conviction was affirmed on direct appeal to this Court as stated. The Michigan Supreme Court denied her application for leave to appeal. *People v Boes*, 474 Mich 853; 702 NW3d 578 (2005).

In 2006, defendant filed a motion for relief from judgment in the trial court. The trial court denied that motion in 2008. Defendant applied to this Court for delayed leave to appeal, which was denied. *People v Boes*, unpublished order of the Court of Appeals, entered March 19, 2009 (Docket No. 290345). Our Supreme Court denied defendant leave to appeal this denial. *People v Boes*, 485 Mich 974; 774 NW2d 903 (2009). The United States District Court for the Eastern District of Michigan denied defendant's petition for a writ of habeas corpus in 2013. See *Boes v Warren*, unpublished opinion of the United States District Court for the Eastern District of Michigan, issued October 3, 2013 (Case No. 2:09-CV-12279).

Defendant filed a successive motion for relief from judgment in the trial court in 2021. In her successive motion, defendant argued that she was entitled to relief from judgment based on newly discovered evidence involving (1) the validity of the expert testimony given by the prosecution's fire origin and causation experts and (2) the validity and admissibility of her statements to police made during her interrogation. In support of her motion, defendant provided a report from a proposed expert witness, John Lentini, a certified fire investigator, indicating that since defendant's trial, the "negative corpus" method, by which a fire investigator determines that an ignitable liquid must have been present despite a lack of physical evidence, was no longer recommended for use in fire investigation; additionally, Lentini's report discussed changes in the analysis of burn patterns in "flashover" fires. Defendant also provided evidence that Dr. De Haan had resigned his membership in the American Academy of Forensic Sciences (AAFS) in 2015, following an internal investigation in which the AAFS Ethics committee found that Dr. De Haan had acted unethically while testifying as an expert witness in 2008. Defendant also provided the report of another proposed expert witness, James Trainum, a former homicide detective and current consultant in the field of police practices and interrogation, opining that there had been a shift in scientific consensus regarding the understanding of false confessions and the validity of interrogation techniques used by law enforcement in interviewing defendant.

In response, the prosecution provided the reports of two proposed expert witnesses. Jamie Lord, a fire protection engineer and instructor in fire dynamics, fluid dynamics, and fire protection systems, opined in his report that Lentini had incorrectly concluded that major changes to the field of fire investigation had occurred since defendant's trial. Dr. Matthew DeLisi, Ph.D., opined in his report that Trainum had incorrectly characterized advances in the study of interrogation techniques and false confessions as new scientific evidence or consensus.

The trial court denied that motion without an evidentiary hearing in 2023. Regarding defendant's fire origin evidence, including the evidence regarding Dr. De Haan's resignation from the AAFS, the trial court found defendant had shown the existence of newly-discovered evidence. However, the trial court found that the introduction of this evidence would not make a different result probable on retrial. Regarding defendant's false confession evidence, the trial court held that defendant had not established the existence of newly-discovered evidence. Defendant applied to this Court for delayed leave to appeal that denial, which this Court granted "limited to the issues raised in the application and supporting brief." *People v Boes*, unpublished order of the Court of Appeals, entered February 28, 2024 (Docket No. 366916).

## II. STANDARD OF REVIEW

This Court reviews for an abuse of discretion a trial court's decision on a motion for a new trial (including a motion for relief from judgment seeking a new trial). See *People v Johnson*, 502 Mich 541, 564; 918 NW2d 676 (2018), citing *People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Id*.

This Court reviews for clear error a trial court's factual findings. *Id*. "Clear error occurs if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *Id*. at 565 (quotation marks and citation omitted). " '[A]ppellate courts need not refrain from scrutinizing a trial court's factual findings, nor may appellate courts tacitly endorse obvious errors under the guise of deference.' " *Id*., quoting *People v McSwain*, 259 Mich App 654, 683; 676 NW2d 236 (2003) (quotation marks and citations omitted).

## III. ANALYSIS

Defendant argues that the trial court abused its discretion by denying her successive motion for relief from judgment without holding an evidentiary hearing. We agree.

## A. GENERAL LEGAL PRINCIPLES

A successive motion for relief from judgment is governed by MCR 6.502(G). See also *Johnson*, 502 Mich at 566. Generally, a criminal defendant may only file one post-appellate motion for relief from judgment. MCR 6.502(G)(1); *Johnson*, 502 Mich at 565. "However, a defendant may file a successive motion based on 'a claim of new evidence that was not discovered before the first such motion.' " *Johnson*, 502 Mich at 566, quoting MCR 6.502(G)(2). If the successive motion is not barred by MCR 6.502(G), then its merits are considered under MCR 6.508(D). A trial court may not grant a motion for relief from judgment premised on grounds for relief that could have been previously raised on appeal or in a prior motion for relief from judgment, unless a defendant shows good cause for failing to raise such grounds earlier and actual prejudice. See *Johnson*, 502 Mich at 565, citing MCR 6.508(D)(3).

> In order for a new trial to be granted on the basis of newly discovered evidence, a defendant must show that: "(1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial." [*Johnson*, 502 Mich at 566, quoting *Cress*, 468 Mich at 692 (quotation marks and citations omitted).]

MCR 6.502(G)(3) provides that, "[f]or purposes of MCR 6.502(G)(2), 'new evidence' includes new scientific evidence." "This includes, but is not limited to, shifts in science entailing changes: (a) in a field of scientific knowledge, including shifts in scientific consensus; (b) in a testifying expert's own scientific knowledge and opinions; or (c) in a scientific method on which the relevant scientific evidence at trial was based." *Id*.

-4-

"In order to determine whether newly discovered evidence makes a different result probable on retrial, a trial court must first determine whether the evidence is credible." *Id*. at 566-567. In the context of considering whether newly-discovered evidence satisfies the fourth *Cress* factor (i.e., makes a different result probable on retrial), the trial court's credibility determination is limited to "whether a reasonable juror could find the testimony credible on retrial." *Id*. at 597. When determining whether newly-discovered evidence is credible, the trial court must keep in mind its "gatekeeping" role; it is not the ultimate fact-finder and should conduct its analysis while "contemplating a future trial and the role of a future fact-finder." *People v Rogers*, 335 Mich App 172, 200; 966 NW2d 181 (2020). Put another way, "[i]f a witness's lack of credibility is such that *no* reasonable juror would consciously entertain a reasonable belief in the witness's veracity, then the trial court should deny a defendant's motion for relief from judgment. However, if a witness is not patently incredible, a trial court's credibility determination must bear in mind what a reasonable juror might make of the testimony, and not what the trial court itself might decide, were it the ultimate fact-finder." *Johnson*, 502 Mich at 566. "[W]hen evaluating a motion for new trial based on newly discovered evidence, the court must consider the evidence admitted at the original trial and all of the record evidence that has come to light to-date that could be used at the retrial." *Rogers*, 335 Mich App at 197.

## B. FIRE ORIGIN EXPERT WITNESS TESTIMONY

In her successive motion for relief from judgment, defendant argued that a new scientific consensus on fire investigation had occurred since her trial, specifically in the area of burn pattern analysis and the use of "negative corpus" evidence and the process of elimination; additionally, defendant argued that newly-discovered evidence cast doubt on Dr. De Haan's credibility as an expert witness. The trial court held that defendant had satisfied the first three *Cress* factors. However, the trial court held that defendant had failed to show that a different result was probable at retrial. See *Cress*, 468 Mich at 692.

We conclude that the trial court abused its discretion by denying defendant's successive motion for relief from judgment without holding an evidentiary hearing. See *Johnson*, 502 Mich at 566-567. The trial court's holding was based primarily on its finding that Lentini's report was "not particularly credible" for several factual reasons: (1) that Lentini's opinion that a flashover fire had occurred contradicted Marquardt's and Dr. De Haan's opinions that a flashover fire had not occurred, (2) that Lentini's report did not discuss deflagration or mention a roof separation, and (3) that Lentini's report did not discuss the victim's bedroom door. The trial court also found that Marquardt and De Haan were credible experts who had appropriately determined that an ignitable liquid must have been used in the hallway. The trial court also found, regarding Lord's report, that the prosecution had presented "a credible expert that has clearly reviewed the whole of the evidence and offered an opinion supportive of De Haan and Marquardt's."

The trial court exceeded its gatekeeping role by prematurely denying defendant's motion without an evidentiary hearing. The trial court did not make an initial determination regarding whether Lentini's report was "patently incredible" and, if not, "what a reasonable juror might make of the testimony" at retrial. See *Johnson*, 502 Mich at 568. Rather, the trial court substituted itself as the ultimate fact-finder. *Id*. Moreover, the trial court found, without much explanation, that Marquardt and Dr. De Haan were credible witnesses; however, the judge presiding over defendant's successive motion for relief from judgment was not the judge who had presided over

-5-

defendant's trial. Therefore, without a hearing, the trial court was not in a superior position to judge the credibility of witnesses *appearing before it*. See *Shann v Shann*, 293 Mich App 302, 307; 809 NW2d 435 (2011); see also MCR 2.613(C). At a minimum, the conflicting expert opinions provided by the parties in support of their positions necessitated a hearing to ascertain those witnesses' credibility. See MCR 6.508(B). Moreover, the trial court should not have assumed Marquardt's and Dr. De Haan's credibility, or indeed assumed that their expert opinions would remain the same and be offered at retrial. An evidentiary hearing would have permitted defendant to address the trial court's concerns engendered by Lentini's report, and would have aided in determining whether Lentini's expert testimony would make a difference at retrial. See *Cress*, 468 Mich at 692.

Our conclusion is bolstered by the fact that the trial court found that defendant had also presented newly-discovered evidence regarding Dr. De Haan's resignation from the AAFS after an ethics investigation and finding that he had acted unethically while testifying as an expert witness for the prosecution. Although the trial court quoted our Supreme Court in stating that "[n]ew impeachment evidence is particularly significant when the only evidence that an offense was ever committed was largely based on the testimony of an individual whose credibility might be put into question," see *People v Barbara*, 400 Mich 352, 363-364; 255 NW2d 171 (1977), it concluded that this new evidence did not qualify because Marquardt provided "credible testimony" similar to De Haan's. Again, the trial court did not determine if the new evidence was "patently incredible" or what a reasonable juror might make of the evidence. See *Johnson*, 502 Mich at 568. Additionally, the credibility of Marquardt's testimony, and his possible testimony on retrial, was simply assumed. Finally, the trial court did not consider the effect at retrial of the newly-discovered evidence regarding De Haan in conjunction with defendant's other newly-discovered evidence. *Rogers*, 335 Mich App at 197. An evidentiary hearing would have allowed resolution of these issues.

## C. FALSE CONFESSION EXPERT WITNESS

Prior to trial, defendant moved to suppress her statements to police on the grounds that they were not voluntarily-made. The trial court denied the motion. Defendant subsequently moved to present expert testimony from a psychologist regarding defendant's emotional state during the interrogation and her susceptibility to suggestion from her interrogators. The trial court permitted the psychologist to testify regarding defendant's psychology in general, but ruled that she could not testify that defendant's psychological "profile or make-up" caused her to act a certain way or answer questions a certain way, or that defendant was acting in conformity with "any condition she might have" when she gave her statements to police. In light of this limitation, defendant opted not to present the expert's testimony. Defendant raised the issue of the denial of her motion to suppress on direct appeal, but did not raise the issue of the trial court's limitation of her expert witness and testimony regarding false confessions. See *Boes*, unpub op at 3.

In her first motion for relief from judgment, defendant offered the testimony of the psychologist who testified at the hearing on defendant's suppression motion, stating that the psychologist would have testified regarding defendant's emotional state and passivity, and how her nature and emotional state would have made her feel like she was not free to leave and rendered her vulnerable to suggestion from her interrogators. The trial court held that defendant had not

demonstrated good cause for failing to raise this issue in her original appeal, and accordingly denied defendant's motion for relief from judgment on that issue.[1]

In his report that accompanied defendant's successive motion for relief from judgment, Trainum opined that the August 7, 2002 and September 12, 2002 interviews were "accusatory interrogations" in which the investigators used techniques that could lead to false confessions. Trainum further opined that a consensus view by "researchers and leading interrogation schools" regarding these tactics and their likelihood of causing false confessions arose after 2006 (when defendant filed her first motion for relief from judgment). The prosecution provided a report from an expert witness, Dr. DeLisi, who opined that "[n]othing in the research from 2006 onward has demonstrated how police interrogation practices contribute to false confessions or that [defendant] offered a false confession, or how."

The trial court held that defendant had not demonstrated that the evidence she offered regarding false confessions constituted newly-discovered evidence, noting that "false confessions have been a well-known phenomenon for decades" and concluding that defendant had not demonstrated "actual changes in evidence or consensus" in this area since 2006. Accordingly, the trial court held that defendant had failed to satisfy MCR 6.502(G)(2)(b).

While a closer question, we conclude under these particular circumstances that the trial court should have conducted an evidentiary hearing before making its ultimate determination regarding defendant's false-confession evidence. As the prosecution does not meaningfully dispute on appeal,[2] defendant's motion as to this topic is "based on 'a claim of new evidence.' " *Johnson*, 502 Mich at 566, quoting MCR 6.502(G)(2). And while the trial court did not purport to reach MCR 6.508(D) and *Cress*, here, much like the fire origin evidence, the court was provided with competing opinions in reports from experts who indicated that they were willing to testify at trial, but the trial court did not avail itself of the opportunity to have those witnesses appear before it and judge their credibility; rather, the trial court seems to have simply found Dr. DeLisi to be more credible. Moreover, it appears that defendant's prior attempts to challenge her confession were based on her allegedly unique susceptibility to suggestion and passivity, not a challenge to the validity and reliability of the methods used by her police interrogators. On this record, and given the importance of defendant's statements to the determination of her guilt, we hold that the trial court should have held an evidentiary hearing before ruling on this issue. See MCR 6.508(B).

---

[1] Defendant did raise the issue of the trial court's limitation of her proposed expert witness testimony in her habeas corpus petition in the United States District Court for the Eastern District of Michigan, arguing that the trial court's ruling amounted to a denial of her right to present a defense; as stated, the District Court denied her petition.

[2] Instead, the prosecution "[a]ssum[ed] for the sake of argument" that defendant's successive motion for relief from judgment is based on new evidence for purposes of MCR 6.502(G).

-7-

D.  CONCLUSION

We conclude that the trial court abused its discretion by denying defendant's successive motion for relief from judgment without holding an evidentiary hearing.  *Johnson*, 502 Mich at 564.  Accordingly, we vacate the trial court's order and remand for an evidentiary hearing.[3]  We do not retain jurisdiction.[4]


/s/ Mark T. Boonstra
/s/ Philip P. Mariani

---

[3] Our opinion should not be construed as offering any opinion as to the proper outcome following an evidentiary hearing.  On remand, the trial court should apply the ordinary standards under MCR 6.508(D).

[4] Defendant requests that we remand for an evidentiary hearing before a new judge.  Although we conclude that the trial judge erred by deciding this matter without holding an evidentiary hearing, we conclude that defendant has not demonstrated either actual bias or a risk of the appearance of impropriety.  See MCR 2.003(1)(b); MCR 2.003(C)(1)(b); see also *In re MKK*, 286 Mich App 546, 566; 781 NW2d 132 (2009) ("Disqualification on the basis of bias or prejudice cannot be established merely by repeated rulings against a litigant, even if the rulings are erroneous."); *Kern v Kern-Koskela*, 320 Mich App 212, 231-232; 905 NW2d 453 (2017)("[J]udicial rulings, in and of themselves, almost never constitute a valid basis for a motion alleging bias, unless the judicial opinion displays a 'deep-seated favoritism or antagonism that would make fair judgment impossible and overcomes a heavy presumption of judicial impartiality.' ") (citations omitted).